NORTHVILLE STATE BANK *v.* DETROIT SILVER REFINING CO.

1. BILLS AND NOTES — CORPORATIONS — SECRETARY — NEGOTIABLE PAPER.

No valid authority to execute negotiable paper of a corporation was conferred on the secretary by a resolution granting power to the secretary to indorse checks, drafts, bills of exchange, certificates of deposit, etc., and receipt for the same and to receive and receipt for the cash or negotiable bills of exchange.

2. SAME—BOARD OF DIRECTORS—RESOLUTION.

And the trial court did not err, in an action on a promissory note of the corporation, in excluding from the evidence a paper purporting to be a resolution of the company, signed by its president and secretary, which authorized the making of the note sued upon, where the evidence did not show when it was adopted and it appeared that the president who signed it had resigned

shortly before the note was executed and that none of the money obtained on the note reached the treasury of the defendant, and a verdict was properly directed for the defendant corporation on the ground that proper authority to execute the paper was not shown.

Error to Genesee; Wisner, J. Submitted April 21, 1914. (Docket No. 100.) Decided July 24, 1914. Rehearing denied December 19, 1914.

Assumpsit by the Northville State Bank against the Detroit Silver Refining Company on a promissory note. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Oscar M. Springer* (*E. L. Bray*, of counsel), for appellant.

*Lee & Parker*, for appellee.

BROOKE, J. Plaintiff brought suit against defendant upon a promissory note. The note was for $2,000, dated December 14, 1909, due three months after date. It was signed: "Detroit Silver Refining Company, by E. G. Rognon, Secretary." It was indorsed by seven gentlemen interested as officers or stockholders in the defendant company. Certain payments were thereafter made upon the note, so that at the time of the hearing in the court below the amount due, with interest, was $1,391.23. The defendant under a plea of the general issue gave notice that it would show that the note in question was not the note of the defendant, and that no consideration had ever passed from the plaintiff to the defendant on account of said note. In support of its plea defendant filed the affidavit of its president, George Flanders, denying the execution of the instrument sued upon. It appears that when the note fell due on March 14, 1910, it was not paid or renewed, but that two of the indorsers gave to the bank a new note as security for the pay-

ment of the paper sued upon. The defendant company is a foreign corporation. Its principal asset at the time it was organized seems to have been a secret process for the removal of silver from silver-bearing ore. Its earlier activities seem to have taken place in the city of Detroit and vicinity, where most of its stockholders and directors were located. It seems that in the fall of 1909 certain residents of the city of Flint became interested in the proposition, and ultimately took over the control of the company. On November 25th a meeting of the board of directors was held in the city of Detroit, at which the following resignations were accepted: Vern E. Matteson, director; Percy M. Scott, director; E. F. Matteson, treasurer; John B. Eldert, president. At the same meeting George Flanders was elected president and director, and W. E. Martin director and treasurer. So far as the records of the defendant corporation show, there was no further meeting until December 23, 1909, when a meeting was held in the city of Flint. At that meeting the resignation of E. G. Rognon as secretary was accepted. Mr. Thomas B. Stevenson was elected secretary *pro tem.*, and George E. Eckert was elected director to fill vacancy. The minutes recite further that, as Mr. Flanders had no stock in the company on November 25, 1909, when he was elected president, his election was irregular, and John B. Eldert was elected president to fill vacancy if any existed.

Prior to all these happenings, and on September 11, 1909, the duties of the secretary had been defined in the following resolution:

"Be it resolved that the secretary of this corporation, E. G. Rognon, is hereby authorized to indorse all checks, drafts, bills of exchange, certificates of deposit, etc., made payable to this company, to receive and receipt for the same and to receive and receipt for the cash or negotiable bills of exchange for the

same, also to receive and receipt for the cash or checks payable to the company from the sales of treasury stock or from any other sources of revenue."

It is clear from the foregoing that Rognon, as secretary, had no authority from the corporation to execute commercial paper in its name. It was the claim of the plaintiff, however, that such authority was given him by a meeting of the board of directors held either shortly before or after the meeting of November 25, 1909.

No record was produced of such action by the board, although John B. Eldert, one time president of the defendant company, gave testimony tending to show that the board of directors had authorized Rognon to execute the note in question. This note seems to have been negotiated with the plaintiff bank by one George E. Eckert. Eckert, though later made a director of that company, at that time seems to have been its legal advisor. He was a stockholder in the company, and was assisted in negotiating the note by G. D. Spencer. Both of them indorsed the note. It is undisputed that the money raised upon the note was placed in the hands of Eckert, and never reached the treasury of the company. Eckert used some portion of the money in the purchase of silver ore, which was turned over to the company, but this ore was paid for by the company to the amount of $300, and that money was by Eckert paid to the plaintiff and indorsed upon the note. As bearing upon the question of the authority of Rognon to execute the note in question binding the defendant company, at the conclusion of the case plaintiff offered the following paper:

"Whereas, this company is desirous of purchasing about three thousand dollars worth of silver ore for treatment in its silver refining plant, and it is not desired to sell stock to raise money for such purpose.

"Be it resolved that the secretary, E. G. Rognon, is

authorized to borrow for ninety days on the credit of the company, and execute a company note for the above amount, or any part thereof, and pledge security the stock of this company, at the-rate of ten cents per share, that George E. Eckert as trustee is authorized to deliver said stock, as collateral to the note, and to receive payment of such borrowed money.

[Signed] "JOHN B. ELDERT, President.
"E. G. ROGNON, Secretary."

—stating that counsel had learned of its existence only that morning. The court below declined to receive the paper in question. It will be noted that this paper is undated, and, as before stated, there is no official record of any meeting at which such a resolution was passed by the board of directors of the defendant company. Moreover, it purports to be signed by John B. Eldert, president. If it was signed by Mr. Eldert at or near the time of the making of the note (December 14, 1909), it is clear that he was not, in fact, president, because his resignation had been tendered and accepted on November 29th.

The learned circuit judge directed a verdict for the defendant upon the ground that all the indorsers upon the note were joint makers with the defendant, and that the plaintiff could not maintain its action against one only of those liable. It is unnecessary, in our opinion, to determine whether this ground for direction is sound. We are of opinion that, under all the evidence in the case, there is no sufficient showing of the authority of Rognon to execute a piece of commercial paper which would bind the defendant company. *Gould* v. *W. J. Gould & Co.*, 134 Mich. 515 (96 N. W. 576, 104 Am. St. Rep. 624, 2 Am. & Eng. Ann. Cas. 519).

The verdict was properly directed for the defendant company, and the judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.