PEOPLE *v.* HARRINGTON.

.1. CRIMINAL LAW — EVIDENCE — ASSAULT WITH INTENT TO RAPE — STATUTORY RAPE.

Testimony that the complaining witness complained to her uncle of an alleged indecent assault committed by respondent in an express car, and what she stated in that connection, where the girl was about 14 years of age, and the account was given directly after she left the train at its destination, was competent. OSTRANDER, BIRD, and MOORE, JJ., dissenting.

2. SAME—EVIDENCE—COMPLAINT.

That the uncle tried to learn the name of the guilty person was not erroneously received in evidence, though immaterial, as it did not prejudice the accused.

3. SAME—OFFENSES INCLUDED—CHARGE.

The court did not commit error in instructing the jury that the information, which charged respondent with an assault with intent to commit rape under 3 Comp. Laws, § 11490 (4 How. Stat. [2d Ed.] § 14543), would warrant a conviction of assault with intent to commit rape or of simple assault.

4. SAME—HEARSAY—DEPOSITION.

Though a deposition taken upon preliminary examination should not be used as substantive evidence, if it is possible to produce the witness upon the stand, the prosecuting attorney did not commit harmful error in reading during the argument from a deposition of one of the witnesses taken on the examination, which respondent's attorney had introduced in evidence with the understanding that the testimony might be read in the course of the argument.

5. SAME.

*Held,* that the evidence, as shown by the record, warranted the jury in finding a verdict of guilty.

Exceptions before sentence from Houghton; O'Brien, J. Submitted April 23, 1915. (Docket No.

118.)   Decided June 7, 1915.   Rehearing denied July 23, 1915.

Robert E. Harrington was convicted of assault with intent to ravish.   Affirmed.

*William J. Galbraith,* Prosecuting Attorney, for the people.

*Burritt & Burritt,* for respondent.

KUHN, J.   The respondent was convicted of an assault with intent feloniously and unlawfully to carnally know and abuse Nellie Ball, a female child under the age of 16 years, to wit, of the age of 14 years, under section 11490, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14543).   The case is brought here on exceptions before sentence.

The respondent on the 26th day of July, 1914, was working as a brakeman for the Copper Range Railroad Company, and on the afternoon of that day met Nellie while his train was at Freda Park, a station about 16 miles from Houghton in this State, and a short distance from Freda, where Nellie lived, which is the first station north of Freda Park.   They became acquainted through a flirtation, and, upon entering into a conversation, defendant asked her what she was mad about.   She answered, "Because no one would take me home."   He thereupon replied, "I will take you home," and they then walked on together until they reached a car, and, upon being invited by respondent, Nellie entered the car.   This car had two compartments, one used for passengers and the other for express, connected by a door.   The respondent took Nellie into an express compartment.

Nellie did not leave the train at Freda, but went through to Houghton, and it is her claim that before the car started from Freda Park, and while on the

way from that station to Houghton, the respondent kissed her, took liberties with her person by putting his hands under her clothes, exposed her leg to the conductor, made remarks concerning it, and attempted to pull her onto a box; that he had her on the box once, and on his lap; that he told her obscene stories, felt of her breast, and put his hand inside her waist, and, when they left Beacon Hill Station, she said:

"I stood and I looked out of the window in the door, and he was behind my back, and he was bumping behind my back.

"Q. Move his body toward you?

"A. Yes.

"Q. Did he expose any of his person to you?

"A. He showed me something on him through his clothes right there (indicating)."

It is her claim that she pushed him away and tried to avoid his attention, and tried to get off the train at Freda station, but that respondent held her; that she did not make any outcry because she was afraid respondent would choke her or put a handkerchief in her mouth. She also claims that Harrington said that when they arrived at Houghton he would take her to an hotel for supper, and take her to a picture show. When the train arrived at Houghton, Nellie left it, and met an uncle on the station platform, who rode from Freda Park to Houghton on the same train, and stated on the witness stand that:

"I told him a man put me on at Freda and held me on the train and took me to Houghton, would not let me off. I told him he was a short man and fat, and he asked me what he told me his name was, and I said Joe Shea, and my uncle went to look around for him. He tore my dress on one side about that big (demonstrating). He tore it in front on both sides. It was a white dress. After I told my uncle the story, he went upstairs in the Houghton depot and was trying to find out the man's name."

The claimed improper conduct of the respondent toward Nellie was corroborated by the fireman on the train, who testified that he was on top of the tender of the engine and looking through the window of the baggage car while the train was standing at Freda Park, and that he saw the respondent have his hand under Nellie's clothes, and demonstrated it in such a manner as to show that Harrington had his hand clear up under her clothing above her knees. The respondent admitted that while the car was at Freda Park he kissed Nellie and put his hands under her clothes on the leg below the knee, but it is his claim that he did this in a spirit of fun; and also admitted telling the indecent stories; but denies that he took any other liberties with her. The conductor and another brakeman both testified that they were in the car, and saw nothing improper in the conduct between respondent and Nellie.

The errors relied upon are stated by counsel as follows:

(1) Error committed by the court in permitting the witness Nellie Ball to testify to what her uncle did after she told her story to him; and also in overruling defendant's objection to the following question asked the witness: "Q. When you met your uncle, state if you told your uncle anything at that time." And permitting the witness to testify in detail what she told her uncle; and also in overruling the defendant's objection to permitting the uncle to testify in detail what Nellie told him when they met at the depot.

(2) Error by the court in holding and deciding that a girl 14 years of age has not the power to consent to taking liberties with her person.

(3) Error in permitting the prosecuting attorney to read from the deposition of Nellie Ball in the closing argument to the jury.

(4) Errors in the charge of the court and in the refusing to charge as requested.

(5) Error in denying defendant's motion for a new trial.

We have above set forth the testimony from the record showing what was told by Nellie to her uncle upon her arrival at Houghton. Considering the fact that this conversation occurred immediately after the commission of the offense, and also considering her years, we are of the opinion that it was not improper for the trial court to admit her testimony as to what she stated to her uncle, and also her uncle's testimony as to what she said to him. *Brown* v. *People*, 36 Mich. 203; *People* v. *Brown*, 53 Mich. 531 (19 N. W. 172); *People* v. *Gage*, 62 Mich. 271 (28 N. W. 835, 4 Am. St. Rep. 854); *People* v. *Bernor*, 115 Mich. 692 (74 N. W. 184); *People* v. *Marrs*, 125 Mich. 376 (84 N. W. 284). It is true that her statement as to what her uncle did after she told him what had occurred is entirely immaterial, but it does not occur to us that the mere fact that he went upstairs in the depot and tried to find out the man's name could, by its introduction in evidence, have prejudiced the respondent's case.

It is the contention of counsel for respondent that the court erred in holding that a girl 14 years of age has not the power to consent to taking liberties with her person, and attention is called to section 11719, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14817), which makes an assault upon a female under the age of 14 years by taking indecent and improper liberties with the person of such a child a felonious assault. The court charged the jury that, under the information filed in this case charging respondent with an assault with intent to commit rape, the respondent might be found guilty either of an assault with intent to commit rape or of a simple assault. We think that, under the testimony shown by this record, this charge of the court was proper, as the information does not

charge the offense alleged in said section 11719, 3
Comp. Laws (5 How. Stat. [2d Ed.] § 14817). It
simply charges an assault with intent to commit rape,
and, if the jury had found that the intent essential
for the commission of the major offense was absent,
clearly, under the facts here disclosed, the jury might
have been warranted in finding respondent guilty of
a simple assault, irrespective of the age of the girl.

With reference to the contention of counsel con-
cerning the reading of the deposition of Nellie Ball
in the closing arguments to the jury, the record dis-
closes that while she was upon the witness stand the
following occurred:

"*Mr. Burritt:* We would like the privilege of ex-
amining her testimony. We offer in evidence, if the
court please, with the privilege of course of reading
to the jury, the testimony of this witness taken on the
examination.

"*Mr. Lucas:* I object, excepting to such parts as
read to the witness and giving her an opportunity to
explain.

"*Mr. Burritt:* She may take the stand and have it
all read then, and after it is read she may take the
stand and explain any portion of it she wants to. We
offer the testimony taken at the examination and wish
to read it to the jury and see the discrepancies, if any.

"*The Court:* The testimony will be admitted, and
it may be read to the jury now, if you wish. The
witness may look over the evidence, and you can look
it over at noon, and, if you wish to call her to explain
any portion of it, you may do so, so, in that event,
you need not read it now, but you may read it in your
argument.

"*Mr. Burritt:* We can read it in our argument.

"*The Court:* You can read it in your argument,
or any part of it."

Counsel for respondent did not comment upon this
testimony of the witness taken upon examination dur-
ing his argument, but the prosecutor did refer to it
during his closing argument, and read the abstracts

from it. Counsel for respondent objected on the ground that it could not be read to the jury as substantive proof of any fact or facts. Thereupon the court said:

"The jury will not regard it as substantive proof, but I shall hold the prosecuting attorney can read it in answer to the argument of the attorney for respondent. Simply by way of argument."

It is true that this court has held that a deposition taken upon the examination should not be used as substantive evidence, where the witness herself could be produced upon the stand. *People* v. *Miner*, 138 Mich. 290 (101 N. W. 536), citing the case of *People* v. *Elco*, 131 Mich. 519, 523 (91 N. W. 755, 94 N. W. 1069). In the instant case, however, the deposition was introduced by counsel for the respondent for the very purpose of using it in argument. The testimony of the witness herself was had upon the trial, and the court expressly directed the jury that the deposition should not be used as substantive proof, but only by way of argument. In view of the situation thus created, we do not think it can be said to have been error to allow the deposition to be used in the way that it was.

We have carefully examined the charge of the court, and are satisfied that the rights of the respondent were properly conserved, and that the issue was fairly and impartially presented to the jury. We are further satisfied that the evidence in the case shown by the record is sufficient to warrant the jury in concluding that the respondent was guilty of the offense charged beyond a reasonable doubt, and the court was therefore justified in denying respondent's motion for a new trial.

Because of these conclusions, it follows that the conviction of the respondent must be, and is hereby,

affirmed, and the trial court is advised to proceed to judgment.

BROOKE, C. J., and MCALVAY, STONE, and STEERE, JJ., concurred with KUHN, J.

OSTRANDER, J. (*concurring*). The testimony of the conversation occurring between the complaining witness and her uncle at Houghton, if treated as a statement by her of the details of the indignity charged in the information, should have been excluded. The general rule which excludes it is a salutary rule. The exception to which attention is directed in the opinion of Mr. Justice KUHN ought not to be extended, and I think it will be regarded as having been extended if the ruling of the lower court in this case is approved. I agree with Mr. Justice KUHN in saying that the testimony was immaterial, which is another and sufficient reason for excluding it. And I also agree, but with some hesitation, to the conclusion that the ruling was not prejudicial to respondent.

BIRD and MOORE, JJ., concurred with OSTRANDER, J.