PEOPLE v. JOHNSON.

1. Criminal Law — Larceny — Witnesses — Evidence — Foundation—Expert Testimony.

In a prosecution for the larceny of certain ladies' dresses and skirts from a store, the owner of said goods was properly permitted to testify as to their value, over an objection that the proper foundation had not been laid therefor, where witness had already testified that he had been in the business of handling said goods for three years, that he did the buying for the store, and particularly described the stolen goods and the value thereof.

On possession of recently stolen property as evidence of larceny, see note in 12 L. R. A. (N. S.) 199.

As to when confession is voluntary, see notes in 18 L. R. A. (N. S.) 768; 50 L. R. A. (N. S.) 1077.

2. SAME — WITNESSES — MEMORANDA — USE OF TRANSCRIPT OF
NOTES.

A stenographer, a witness for the people, was properly
permitted to use a transcript of her original notes of
purported statements made by defendant and another to
refresh her memory in testifying thereon, where she
testified that she correctly took down the statements in
her original notes, and the transcript of same used by
her was correct.

3. SAME—TRIAL—INSTRUCTIONS—LARCENY.

The charge of the court, referring to the information and
the offense there charged, with instructions as to what
the State must prove, *held*, in the absence of any request
to charge upon the subject, a sufficient definition of the
crime of larceny.

4. SAME—POSSESSION OF STOLEN GOODS AS EVIDENCE.

An instruction by the court that, in a larceny case, the
recent possession of the subject of the larceny is some
evidence of the guilt of the possessor, where the rights
of the defendant were properly guarded, *held*, not
erroneous.

5. SAME—CONFESSIONS—ADMISSIBILITY—WEIGHT FOR JURY.

Where a purported confession in evidence was claimed by
defendant to have been obtained by the officers by assault,
threats and intimidation, which was denied by said offi-
cers, who testified that it was entirely voluntary, the court
was not in error in refusing to strike the same from the
record, but properly instructed the jury that if it was ob-
tained by reason of any force used or threats made it
was not admissible, but that if they found that it was
made voluntarily and freely, then they should give it
such weight as they believed it deserved.

6. SAME—INSTRUCTIONS—DEFENDANT'S INTEREST.

*Held*, not reversible error for the court to call the at-
tention of the jury to the fact that defendant had an
interest in the case, in connection with his instructions
as to the weight to be given defendant's testimony
denying that a purported confession was voluntarily
made.

Error to recorder's court of Detroit; Keidan

(Harry B.), J.   Submitted June 16, 1921.   (Docket No. 101.)   Decided July 19, 1921.

Eugene Johnson was convicted of larceny, and sentenced to imprisonment for not less than 2½ nor more than 5 years in the State prison at Jackson. Affirmed.

*R. Nicholson,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Edwin S. Bartlett,* Assistant Prosecuting Attorney, for the people.

STONE, J.   This defendant and another were charged in the information with feloniously, wilfully and unlawfully breaking and entering the store of one Solomon Shapiro, in the city of Detroit, not adjoining to or occupied by a dwelling house, on the 4th day of August, 1920.   On the trial of the case in the recorder's court for the city of Detroit, on the 7th day of September, 1920, it early developed that the store did not come within the statutory definition, in that it appeared that it was adjoining to a dwelling house.   Whereupon the court withdrew from the consideration of the jury the breaking and entering charge, and directed the trial to proceed on the charge of larceny.   The larceny charge contained in the information was in the following words:

"And then and there in the said store 18 dresses and 35 ladies' skirts of the total value of $900, of the goods and chattels of the said Solomon Shapiro, in said store, then and there being found, then and there feloniously, wilfully and unlawfully did steal, take and carry away, contrary to the form of the statute," etc.

Upon this charge the defendant was convicted and sentenced.   A motion for a new trial was made and

denied, but we find no assignment of error relating to said motion. The case is here upon writ of error.

The first assignment of error is that the witness Shapiro was permitted to answer the question: "What was the value of the goods stolen out of your place?" . Which question was objected to by defendant's counsel on the ground that there had been no foundation laid therefor. An examination of the record discloses that proper foundation had been laid. It already appeared in the testimony of Shapiro that he was in the business of the New York Cloak & Suit House, and had been in such business for a period of three years. He testified to the time when the store was broken into; he particularly described the goods stolen and the value thereof, and testified that he did the buying for the store. In the light of this testimony we must hold that there is no merit in this assignment of error.

The second assignment of error is to the effect that the court erred in permitting Blanche Koehler, a witness for the people and a stenographer in the office of the prosecuting attorney, to read into the record of the cause purported statements, styled confessions, from a transcript instead of from her original notes claimed to have been made at the office of the prosecuting attorney, on August 27, 1920, by the defendant. This witness testified that she was a stenographer in the office of the prosecuting attorney; that she correctly took down the statement of the defendant and that of the other defendant and made a correct transcript therefrom. It appearing that she testified that the paper was a correct transcript of the notes which she had taken, she was permitted to use the transcript for the purpose of refreshing her recollection, and the record indicates that she read from this transcript. It appearing that the witness testified that she correctly took down the statement in her original notes

and thereafter made a correct transcript therefrom, which she used upon the trial, we fail to see any error in the course pursued. The stenographer or any one else who heard the defendant's statement would be competent to testify to what he said; and the stenographer may use her minutes for the purpose of refreshing her recollection as to what the defendant stated. *Merrill* v. *Leisenring,* 166 Mich. 219, 227, and cases there cited. We find no error here.

The third assignment of error is that the court erred in refusing to order the purported confession of the defendant stricken from the record of the case. The court did not err in refusing to strike, and this subject will be considered in connection with the sixth assignment of error.

The fourth assignment of error is to the effect that the court erred in its charge to the jury upon the subject of larceny, without defining that offense. The language of the charge upon this subject, after stating the substance of the information, was as follows:

"What must the State prove, and what are the elements of the offense charged? The State must prove, first, that this offense was committed in the city of Detroit, on a day named in the information— that is, on August 4th of this year. The State must prove beyond all reasonable doubt that at that time and place these defendants unlawfully took and carried away the personal goods or property of Solomon Shapiro. The State must prove that they took and carried away such property without any color of right for so doing—that is, that they had no right to take the property, and further, that they took the property with the intention to permanently deprive the owner of the same. Now, if the State has proved all of these elements to your satisfaction, and to the satisfaction of each one of you, it would be your duty under your oaths, to find the defendants, or such defendant as to whose guilt you have no reasonable doubt, guilty of the charge of larceny."

As we have above stated, it will be noted that the court had called the attention of the jury to the information that the defendant then and there feloniously did steal, take and carry away the goods and chattels described, contrary to the form of the statute, etc. In the absence of any request to charge upon this subject, we think the language of the court was a sufficient definition of the crime.

The fifth assignment of error is that the court erred in its charge to the jury when it used the following language:

"Now, gentlemen of the jury, in a larceny case, I charge you that the recent possession of the subject of the larceny is some evidence—not conclusive—but is some evidence of the guilt of the possessor. That is to say, if it is shown that personal property is stolen at a certain time, and shortly thereafter the personal property, or some of it, is found in the possession of the accused, and he fails to give any excuse, or any reasonable explanation of his possession of the personal property, then his mere possession would be some evidence of his guilt in a case of larceny."

The witness, Esther Jones, testified that she knew the defendant, that is:

"Just to see him, not personally. I don't know him by name; he is the man I saw; my brother-in-law bought something from him. * * *

"Q. Were you there when the goods were bought?

"A. He (my brother-in-law) asked me if I wanted a dress, and I told him yes; my brother-in-law bought a blue dress for me, that is it here; I bought it from Johnson. I did not buy the other two. I know a girl who bought other dresses. Blanche Simms was rooming there. It was the brown dress that was bought while I was there."

This witness testified, upon cross-examination, that she was in another room in her night clothes when

the purchase was made, and that she saw the defendant:

"I was in my door standing, looking outside, I saw him give him the money, they were standing just like this; I had my door pushed open. I was in my night clothes. They were in one room and I in the other. I can identify this particular garment, because I know that was my dress; I could not tell it from a similar colored one. It looks like it. I could not say positively that is the garment."

She further testified that she turned the dress over to one John McDonald, a police officer. McDonald was sworn and produced the dress he testified he got from Esther Jones, and produced also certain other dresses. While these dresses were used upon the trial they do not seem to have been formally introduced in evidence. While the failure to offer the dresses in evidence is referred to by defendant's counsel, we find no assignment of error relating to the subject. The exact time when Esther Jones purchased the dress referred to does not appear, but as the larceny was alleged to have been committed on August 4, 1920, and the trial took place on the 7th of September of the same year, it necessarily was between these dates. We find no error in this part of the charge. In fact, we think it was guarded and well within the authorities. That evidence of possession by the defendant of the property stolen is always admissible is universally agreed. 17 R. C. L. p. 71. It is an evidentiary fact which should be submitted to the jury to be considered with the other facts and circumstances disclosed by the evidence.

The sixth assignment of error is to the effect that the court erred in its instruction to the jury upon the subject of confessions. The entire charge upon that subject was as follows:

"Now, the State, in this case, claims that these defendants made certain statements, or confessions,

or admissions to the officers and the prosecuting attorney sometime after their arrest on this charge. I have admitted the testimony relative to those admissions, but after all, you gentlemen just decide, under the law, whether or not the statements were made freely and voluntarily. Any confessions or admissions that are made by reason of any force that is used, or any threats that are made, or any promises that are made, are not admissible, and whether or not any threats were made, or any force was used, is a matter that you men must determine from the evidence in this case. If these confessions were made voluntarily; if they were made freely; if there was no force used or no threats made to get the defendants to make such statements—that is, if they were made of their own free will, then you men could give them such weight as you believe they deserve. Now, it is claimed on behalf of defendants that they made these statements because of threats that were made by some of the officers in the case, or force used by some of the officers in the case—of course, that is their claim. On behalf of the State it is denied that any threats were made, and that any force was used. You gentlemen just decide what the truth is; you must decide whether or not these statements were made freely and voluntarily, and that you must decide from the evidence in the case—that is, from the testimony of the various witnesses in the case. Of course, you gentlemen are not bound, necessarily, by the statement of any witness. You may either believe the witness or you may disbelieve the witness. You may take into consideration the interest that he has in the outcome of the case. So far as these defendants are concerned, I think I may say to you that they have an interest in the outcome of this case, because they are charged with this offense, and naturally are interested in the outcome of this case, and that you may consider in weighing their testimony. But, notwithstanding that, gentlemen of the jury, it is for you to say which one of these witnesses you are going to believe, and the weight you are going to attach to the testimony of any witness or witnesses in the case."

It is proper to say that upon this subject there

was a sharp conflict in the evidence between the testimony of the defendant on the one hand, and that of the police officers on the other, the defendant testifying that he was assaulted and threatened by them, and intimidated at the time he made the claimed confession. This is absolutely denied by the officers present, who claim that no force of any kind was used. The question was therefore one for the jury within our decisions.

In the case of *People* v. *Prestidge*, 182 Mich. 80, this court, speaking through Justice BIRD, held that the question whether the confession was voluntary or involuntary is for the court if the matter is clear and the testimony is undisputed; but if there is ground for doubt, the court may leave it to the jury to determine whether the confession should be considered. See authorities there cited; also, see *People* v. *McClintic*, 193 Mich. 589 (L. R. A. 1917C, 52). We think there was no error in the charge of the court upon this subject.

Upon the subject of the interest of the defendant, see *People* v. *Williams*, 208 Mich. 586; *People* v. *Wassmus*, 214 Mich. 42; *People* v. *Hahn*, 214 Mich. 419.

The seventh assignment of error is that the court erred in instructing the jury as follows:

"I think I should say to you, too, gentlemen of the jury, that in this case, if you should find from the evidence, that these defendants agreed between themselves, or between themselves and some other or others, to commit this crime; that is, to commit the crime of larceny, then the act of any one of the party to the agreement—to the unlawful agreement, would be the act of all of the others, so long as such act or acts came within the scope or purview of the illegal agreement. In other words, gentlemen of the jury, if these two defendants agreed among themselves to commit this crime—the crime here charged—or if they agreed

unlawfully among themselves, or with others, to commit this crime—a felony—then if they went out to this place, and these defendants, or either one of these defendants, were present, aiding, and assisting and abetting the other or others in carrying out the purposes of the illegal agreement, then the act of one would become the act of the others, and the act of the others would become the act of the one or the two, if you should so find in this case, gentlemen of the jury, so long as such acts came within the purview of the illegal agreement."

Some other matters are discussed by counsel which are not clearly covered by any assignment of error. For instance, complaint is made that the people did not produce the brother-in-law of Esther Jones; but it will be borne in mind that he was not a *res gestæ* witness, and there was no claim that he was present at the time of the commission of the offense. We think the matter is ruled by *People* v. *Henshaw*, 52 Mich. 564. If believed, there was testimony sufficient to sustain the verdict.

No error is assigned, as we have said, because of the refusal of the motion for a new trial. The question is not before us, but it may be said that the grounds of the motion were that the verdict was contrary to the evidence, and contrary to the weight of the evidence, and that the sentence was grossly excessive and unreasonable. We do not agree with the claim of counsel upon either of these matters.

We have now considered not only all of the assignments of error, but have looked into the entire record and find no reversible error.

The judgment of the court below is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.