## PEOPLE *v.* BEST.

1. CRIMINAL LAW — EVIDENCE — ADMISSIBILITY — CONFESSIONS — WEIGHT FOR JURY.

   In a prosecution for murder, where the question as to whether defendant's confessions were made under duress, as claimed by him, or voluntarily, as claimed by the officers and others, was properly submitted to the jury, it was not error to receive them; their weight being for the jury.

2. SAME—EVIDENCE—ADMISSIBILITY.

   Testimony that defendant told witness that after the murder he went to the river, washed his hands, dried them on deceased's handkerchief, that he then threw the handkerchief into the river, and that witness later found a handkerchief on the bank of the river, *held*, properly admitted, with the handkerchief, although it was not identified as belonging to deceased.

3. HOMICIDE — MURDER WITH INTENT TO RAPE—TRIAL—INSTRUCTIONS—EVIDENCE.

   In view of 3 Comp. Laws 1915, § 15192, defining murder in the first degree, where there was evidence from which the jury might infer that the theory of the prosecution that defendant committed the murder while attempting to commit rape was right, there was no error in submitting the case to the jury on said theory, under proper instructions.

4. SAME—EVIDENCE—CORPUS DELICTI.

   Evidence *held*, sufficient to establish the *corpus delicti.*

5. SAME—TRIAL—INSTRUCTIONS AS TO MANSLAUGHTER.

   Where there was evidence to support the charge that defendant killed deceased in an attempt to commit rape, an offense made murder in the first degree by 3 Comp. Laws 1915, § 15192, an instruction that there was little evidence touching on the phase of manslaughter, *held*, not prejudicial error.

On the question of proof of *corpus delicti* in homicide, see note in 68 L. R. A. 35.

6. CRIMINAL LAW—TRIAL—INSTRUCTIONS.

Complaint that the charge was argumentative, that the trial judge singled out the witnesses by name and gave undue emphasis to the testimony of the witnesses for the people, *held*, not reversible error.

7. SAME—TRIAL—INSTRUCTIONS AS TO GOOD CHARACTER.

An instruction not denying to accused the benefit of good reputation, but instructing the jury that, if the evidence was convincing beyond a reasonable doubt, it was their duty to convict notwithstanding the good reputation, *held*, not reversible error.

8. NEW TRIAL.

Motion for new trial, *held*, properly denied.

9. CRIMINAL LAW — CIRCUMSTANTIAL EVIDENCE — MISCARRIAGE OF JUSTICE.

Evidence reviewed, and defendant's conviction *held*, under the record, not to amount to a miscarriage of justice.

Error to Oakland; Rockwell (Kleber P.), J. Submitted January 12, 1922. (Docket No. 147.) Decided March 30, 1922.

Anson Best was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Marquette. Affirmed.

*Ralph T. Keeling* (*Elmer E. Stockwell* and *Clifford A. Bishop*, of counsel), for appellant.

*A. Floyd Blakeslee*, Prosecuting Attorney, for the people.

CLARK, J. Some persons who, near midnight, had returned from a dance, were chatting for a moment in front of the dwelling of one of them. They became suspicious of the appearance and conduct of a man upon the porch of a vacant house across the street. One of them, Clifford Whittemore, having an automobile, went for a police officer, returned with him,

and they found upon the porch the dead body of Vera Schneider, who in life had been a young unmarried woman employed in Pontiac as a telephone operator. Handkerchiefs were tied about her throat. There was blood upon her face. Other police officers were called. Whittemore went for an undertaker. The vacant house was near a river. About this time a witness said he met defendant coming from the direction of the river, along the river bank, and defendant was brushing his clothes and wiping his hands with a handkerchief. Soon thereafter defendant came along the street, crossing it diagonally toward the scene of the murder, and was passing immediately in front of the vacant house when he was stopped by one of the police officers there waiting. His hands and clothing were examined. He was shown the body, and was questioned by the officers. He, a comparative stranger, attempted an explanation of his being in that part of the city at that hour and was permitted to go.

The undertaker and officers found no disarrangement of the clothing of the deceased. Later examination of the body by physicians disclosed discolorations about the head and throat and that death had been caused by strangulation. No other marks upon the body were found. She had not been ravished, nor did the genital organs indicate an attempt. She had never been violated. Several witnesses identified the defendant as the young man who had been about the city in her company that evening. When last seen together they were on the street between 10:30 and 11:00 o'clock. Defendant was taken into custody. He confessed the killing, but he told differing stories of the particulars thereof. Part of the confession was that prior to that evening he had not known the deceased; that after meeting and being about the city they went to the porch of the vacant house. He placed his coat

upon the porch. They sat or lay upon it. They embraced and kissed. He intended sexual intercourse. At what he thought the opportune moment he pressed his intention, but she refused and became hostile, but later she again became pleasant and familiarities were resumed and again he sought to accomplish his purpose. She again became hostile and threatened to call an officer. He struck her. She fell over, breathing heavily, rolling her eyes. Thereupon he choked her to death, using his hands and his handkerchiefs. Then he attempted to wipe the blood from her mouth. He was interrupted by the coming of Whittemore. He went to the river and washed his hands. A handkerchief was later found near the spot on the bank of the river. The confession was made to the officers, and was taken stenographically and transcribed. It was repeated in essential parts to others, newspaper reporters and to defendant's brother. Defendant at the trial sought to repudiate his principal confession, claiming that it had been obtained by duress, and third degree methods generally, on the part of the officers; and claiming, too, that when he made the other confessions, particularly to his brother, he was under the duress so exercised. This claim was denied flatly by the officers and others who heard the confessions. The confessions were received in evidence. Defendant had the benefit of several character witnesses. The information was in the statutory short form provided by section 15739, 3 Comp. Laws 1915. He was convicted of murder in the first degree and has appealed.

1. It was not error to receive the confessions in evidence. The testimony of defendant of duress, threats and promises by which the confessions were obtained is fully and flatly contradicted by the testimony of the officers and others, who said that the confessions were made freely and voluntarily. This made

a question for the jury to determine, and to determine what weight, if any, should be given to the confessions, and the question was submitted with instructions fully protecting the rights of the accused. For a discussion of this question and an instruction somewhat similar to the one here, see *People* v. *Johnson,* 215 Mich. 221.

2. One Robbins, a reporter for a newspaper, was told by defendant, it was testified, that after washing his hands in the river he had wiped them with a handkerchief of the deceased and had then thrown it into the river. Robbins went to the place on the river bank and found, lying on a pile of ashes, a woman's handkerchief, crumpled and soiled. It was not identified as belonging to the deceased. It was shown that she habitually carried two handkerchiefs and that after her death but one was found on the body. We think that under all the facts it was not error to receive in evidence Robbins' testimony and the handkerchief so found.

3. Section 15192, 3 Comp. Laws 1915, defines murder in the first degree:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and shall be punished by solitary confinement at hard labor in the State prison for life."

The theory of the prosecution was not merely a deliberate and premeditated killing, but a killing in an attempt to perpetrate the crime of rape. The case was tried on that theory and the jury were instructed accordingly. We think the instructions submitting such theory were sufficient. But it is urged that there was no evidence of attempted rape and that it was

218 Mich.—10.

error to suggest it in the charge. From a review of the evidence of the people the following appears:

That defendant's purpose in going to the vacant house, and in spreading his coat upon the porch was to have sexual intercourse. Probably he had reason to believe that the young woman, with whom he had no prior acquaintance, who accompanied him to such place, who lay with him on the coat, who kissed and embraced, had a like purpose. His earlier efforts failed. He tried again with the result that she arose or sat up and threatened to call for an officer. The significance of the threat and the conduct preceding it were for the jury.

Then he struck her. Might not the jury infer that the intent in striking was intercourse by force and against her will? The subsequent acts of defendant may have been in furtherance of such attempt, or perhaps to conceal what then had been done. But he was interrupted by the coming of the automobile. He left and returned to the scene of the crime. That there was no penetration or attempt to penetrate is unimportant. We think the jury might infer reasonably that the theory of the prosecution was correct in fact.

The confession and the other facts and circumstances were sufficient to establish the *corpus delicti*. 68 L. R. A. 33; L. R. A. 1916B, 747; 42 L. R. A. (N. S.) 524; 12 A. L. R. 846; 33 Cyc. p. 1430; *People* v. *Toutant*, 133 Mich. 520; *People* v. *Harrington*, 186 Mich. 482.

4. In the instruction respecting manslaughter it was said, "yet I advise you that there is little evidence touching on this phase of the information." This is assigned as error. If the defendant killed the young woman in an attempt to perpetrate the crime of rape; if he committed the crime charged, for which he was tried, and the jury found that he did, the crime was murder in the first degree. It would not be man-

slaughter, for a killing in an attempt to rape, which involves an intent to have sexual intercourse by force and against the will, is murder in the first degree under the statute. We think that upon this record the statement was not prejudicial error. See *People v. Davis,* 217 Mich. 661; *People v. Toner,* 217 Mich. 640.

5. The charge is said to be argumentative and that the trial judge singled out the witnesses by name and gave undue emphasis to the testimony of witnesses for the people. *People v. Clarke,* 105 Mich. 169, is cited, but there the charge, though criticized, was not said to be reversible error. *People v. Cutler,* 197 Mich. 6, is more like the case at bar, and the charge there was held not to be erroneous. We decline to reverse the case on this ground.

6. Complaint is made of the instruction respecting good character, citing *People v. Jassino,* 100 Mich. 536; *People v. Van Dam,* 107 Mich. 425; *People v. Parker,* 166 Mich. 587; *People v. McKeighan,* 205 Mich. 367; *People v. Humphrey,* 194 Mich. 10.

The charge on the subject was taken verbatim from *People v. Mead,* 50 Mich. 228—opinion by Justice COOLEY—and includes the last two paragraphs there quoted.

Justice COOLEY said that by such charge the right to the benefit of good reputation was not denied, and the jury were told that if the evidence was convincing beyond a reasonable doubt it was their duty to convict notwithstanding the good reputation.

The author of a note, 10 A. L. R. 108, classes the *Mead Case* among "those by which the jury are directed to render verdict against the defendant notwithstanding his good character if upon a consideration of the whole evidence, including that element, they are satisfied beyond a reasonable doubt that he

is guilty," and he states that instructions of such tenor have been generally sustained.

While the language approved by Justice Cooley in the *Mead Case* was not as fortunate as that used by him in *People* v. *Garbutt,* 17 Mich. 9 (97 Am. Dec. 162), we think the *Mead Case* should not be classed with those cases in which the jury were told that defendant's good character was of no avail to him, if the evidence, apart from that element, satisfied the jury beyond a reasonable doubt of his guilt, nor with those cases where the jury were told that good character was an element to be considered only in doubtful cases, in which classes fall the cases cited by counsel. And the instructions quoted in the *Mead Case* were held in *People* v. *Parker, supra,* to be "of similar character" to those in the *Garbutt Case,* relied upon by counsel for defendant.

In the case at bar the trial judge gave the two important paragraphs of the *Mead Case,* not one, or one with modifications as was done in some other cases. We do not commend the charge in the *Mead Case,* but we decline now, as we did then, to say that it is reversible error.    For criticism of the *Mead Case* see 10 A. L. R. 59.

Writers in some instances have treated good character with much rhetorical flourish.    An instruction employing such language might be criticized as giving undue emphasis to the subject.    For a request which was approved by this court see *Campbell* v. *People,* 34 Mich. 351, and see *People* v. *Garbutt, supra; People* v. *McAaron,* 121 Mich. 1; *People* v. *Covelesky,* 217 Mich. 90; and for review of Michigan cases upon this subject see 10 A. L. R. 58.

7. The receiving of rebuttal evidence can be justified under the holding of *People* v. *Utter,* 217 Mich. 74.    It was not error to deny the motion for a new trial.    The

other questions discussed by counsel have had attention.

8. Consideration of the record, briefs and the earnest arguments of counsel discloses no miscarriage of justice. The identification of defendant was positive. He was the last person to be seen with deceased before the murder. The circumstantial evidence, and the evidence adduced by other witnesses fit with nicety into defendant's confession. He was found near the scene of the murder. He related what was then known to no other person of record, that the light in the home where the deceased roomed could be seen across lots from the porch of the vacant house. It was demonstrated that the light could be so seen. We find no reversible error.

Judgment affirmed.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.