## PEOPLE *v.* DOVERSPIKE.

1. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY OF CONFESSION.

   Rule that where criminal investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his constitutional right to remain silent, a confession obtained from suspect is inadmissible, is applicable only to cases having substantially comparable fact situations to that in which rule was announced by the Supreme Court of the United States.

2. SAME—ADMISSIBILITY OF CONFESSION.

   Rule that statements by defendant may not be admitted in evidence unless procedural safeguards are employed so as to warn

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 20 Am Jur, Evidence §§ 498, 500.
Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L ed 2d 1735, 4 L ed 2d 1833, 12 L ed 2d 1340.
[4] 21 Am Jur 2d, Criminal Law § 343.
Use in criminal case of testimony given on former trial, or preliminary examination, by witness not available at present trial. 15 ALR 495, 79 ALR 1392, 122 ALR 425, 159 ALR 1240.
[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[6] 53 Am Jur, Trial § 89.
[7] 20 Am Jur, Evidence § 246 *et seq.*
[8–10] 20 Am Jur, Evidence §§ 533, 534.
Constitutional aspects of procedure for determining voluntariness of pretrial confession. 1 ALR3d 1251.
Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L ed 2d 1735, 4 L ed 2d 1833, 12 L ed 2d 1340.
[11] 20 Am Jur, Evidence § 540.
21 Am Jur, Criminal Law § 357.

defendant of his right to remain silent, that any statement he
does make may be used in evidence against him, and that he has
a right to the presence of an attorney, either retained or
appointed, *held*, not to be applicable to cases where trials were
commenced before announcement of such rule on June 13, 1964,
by the Supreme Court of the United States.

3. SAME—ADMISSIBILITY OF CONFESSION.
   Test of admissibility of confession applying at time of 1964 trial
   was that it must have been voluntary, and made without taint
   of fraud, deceit, or compulsion.

4. SAME—RIGHT OF CONFRONTATION—TRANSCRIPT OF TESTIMONY AT
   EXAMINATION.
   Use at trial for homicide of transcript of testimony of witness
   given at preliminary examination, where witness was cross-
   examined by same attorney who represented defendant at
   trial, *held*, not to violate defendant's constitutional right to
   confront witnesses against him when it was conclusively shown
   that witness was physically unable to attend trial and mentally
   incompetent to testify because of illness, and statute authorizes
   such use (Const 1963, art 1, § 20; CL 1948, § 768.26).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PHYSICIAN—EXAMI-
   NATION OF DEFENDANT.
   Objection to testimony of physician who had examined defend-
   ant, not defendant's own physician, made at trial, is not con-
   sidered by appellate court when raised for first time on appeal.

6. CRIMINAL LAW—OPENING STATEMENT—INTERRUPTION BY COURT.
   Trial court's interruption of defendant's counsel as he was making
   opening statement relative to state of mind of defendant,
   charged with homicide, *held*, not prejudicial.

7. SAME—DEFENDANT'S STATE OF MIND—EVIDENCE.
   Defendant in trial for homicide who was questioned fully as to
   his state of mind at time of commission of crime, *held*, not
   prejudiced by refusal of court to allow him to answer question
   of when he was married, where the relevancy of such question
   to his state of mind was not shown.

8. SAME—CONFESSION—ADMISSIBILITY—DETERMINATION OF VOLUN-
   TARINESS.
   Voluntary character of defendant's confession may not be deter-
   mined by same jury that determines defendant's guilt or lack
   of guilt.

9. SAME—CONFESSION—MOTION TO SUPPRESS—VOLUNTARY CHARAC-
   TER.

> Hearing by trial court on motion to suppress defendant's con-
> fession before trial, in which judge permitted admission of
> evidence pertaining to confession at trial, but left determina-
> tion of its voluntary character to jury, *held*, not to be the
> equivalent of hearing required by present procedural case law
> at which judge must determine whether confession is voluntary
> or not.

10. SAME—REMAND—DETERMINATION OF VOLUNTARINESS.

> Case in which jury found defendant. guilty of manslaughter in
> intentionally pointing gun at person and unintentionally shoot-
> ing him, in which confession was admitted at trial without
> preliminary and separate determination by trial judge that
> confession was made voluntarily, is ordered remanded for de-
> termination by trial court of limited issue of whether confes-
> sion was voluntary, with new trial only if it be found to have
> been obtained involuntarily (CL 1948, § 750.329).

11. SAME — REMAND — EVIDENCE — CONFESSION — VOLUNTARINESS
    —WAIVER.

> Defendant convicted of manslaughter who has been permitted
> limited new trial on separate record for purpose of determining
> voluntary character of confession admitted in evidence at
> main trial, would be permitted to testify for limited purpose of
> making a record of his version of facts and circumstances sur-
> rounding his confession, without waiving his right to decline
> to testify at trial in chief, or any other rights stemming from
> his choice not to testify (CL 1948, § 750.329).

Appeal from Ontonagon; Wright (Robert R.), J.
Submitted Division 3 May 6, 1966, at Marquette.
(Docket No. 158.)    Decided November 22, 1966.
Leave to appeal (restricted) granted by Supreme
Court June 8, 1967. See 379 Mich 765.

Gale Martin Doverspike was convicted of man-
slaughter. Defendant appeals. Remanded for de-
termination of voluntariness of confession on a sepa-
rate record, with new trial if confession determined
to be made involuntarily, otherwise to stand af-
firmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Lawrence P. Walsh,* Prosecuting Attorney, for the people.

*Wisti & Jaaskelainen,* for defendant.

HOLBROOK, P. J. Defendant was convicted of manslaughter* in the circuit court for Ontonagon county before a jury in September, 1964. He has taken this appeal and raised the following five questions for review: (1) Whether an accused must be fully advised of his rights and his right to counsel before an alleged confession is obtained from the accused. (2) Whether the same jury can determine the validity of an alleged confession and the guilt of the accused. (3) Whether the rights of an accused are violated where in the absence of a material witness at trial, the testimony of the witness at the preliminary examination is read to the jury. (4) Whether the mental competency of an accused, determined by accused's own physician, at the time of making an alleged confession is material in establishing the validity of the confession. (5) Whether counsel for the accused may in his opening statement and examination of the accused establish the state of mind of the accused for the purpose of later medical testimony of mental competency.

The pertinent facts of the case appear to be as follows: Defendant, age 44 and resident of Green, in Ontonagon county, was accused of the crime of manslaughter in the death of one Norman Colclasure, also a resident of Ontonagon county, on October 7, 1963. For some days prior to the occurrence, the defendant and the deceased had been together and had indulged in drinking alcoholic beverages.

---

* CL 1948, § 750.329 (Stat Ann 1954 Rev § 28.561).

The defendant, the deceased, and two other individuals, after spending the previous night and most of the morning together on the day of the deceased's death, went to the cabin of one George Bigge. It was the people's position and evidence was produced to show that while there the defendant borrowed a 12-gauge shotgun from George Bigge, went outside the cabin and there intentionally aimed the shotgun at the deceased and unintentionally shot him, resulting in his instant death.

The defendant then drove his vehicle some distance to the residence of a relative with whom he resided and there had the Ontonagon county sheriff's office notified of the shooting. Thereafter the sheriff and Michigan State police conducted an investigation, and defendant was taken into custody and lodged in the county jail sometime on the afternoon of October 7, 1963.

The defendant was questioned by the sheriff at the jail that afternoon in the presence of a detective-sergeant of the Michigan State police. The defendant was held over night in jail and the next morning about 9:30 a.m. he was taken by the sheriff to the office of the prosecuting attorney where in the presence of two police officers, the prosecuting attorney, and his secretary, an alleged confession was taken from him. Later in the afternoon the defendant, in the presence of the prosecuting attorney and the Michigan State police detective-sergeant, signed the statement or confession which was admitted in the trial as plaintiff's exhibit 14 over the objection of defendant's counsel. A preliminary examination was held with defendant and his attorney present, before a justice of the peace for Ontonagon county, and defendant was bound over to circuit court for trial.

The circuit court trial was delayed several times due to the illness of a material witness, George

Bigge, the owner of the property where the alleged incident took place, the owner of the 12-gauge shotgun claimed to be the death weapon, and the individual alleged to have loaded the shotgun for defendant. The witness was suffering from a serious illness and a doctor's affidavit each time indicated his inability to testify. In June of 1964, the prosecutor made a motion for the presentation of Mr. Bigge's testimony before the jury to try the case at the White Pine Hospital where Mr. Bigge was a patient or in the alternative for a continuance of the June hearing date. We have no record of what transpired upon the hearing of this motion; however, the people claim that the defendant was opposed to the taking of the testimony of Mr. Bigge at the hospital. The doctor's certificate attached to the motion injected a new element into Mr. Bigge's inability to testify at court by inserting the statement that Mr. Bigge's illness "might be a terminal illness." A continuance was granted and the trial set for September 14, 1964. Prior to trial, defendant made a motion to suppress the confession under GCR 1963, 785.1(2). The motion to suppress was denied by the trial judge, ruling that the confession was admissible, with the issue of voluntariness to be submitted to the jury as a question of fact in accordance with the settled law at the time. The trial was had and the testimony of George Bigge at the examination was read to the jury, over the objection of defendant. It is noted that the counsel on this appeal is the same counsel that represented the defendant at the examination and cross-examined George Bigge as well as other witnesses and who also represented the defendant at the time in circuit court.

The first question presented by defendant is answered in the negative as determined by the cases of *People* v. *Hoaglin* (1933), 262 Mich 162 and *People*

v. *Louzon* (1953), 338 Mich 146.  The test according to these cases is stated in *Hoaglin, supra,* wherein Mr. Justice BUTZEL on page 167 said:

"The court properly admitted defendant Hoaglin's signed statement, made the day following the accident.  He instructed the jury that, before giving it any consideration, they should determine that it was *voluntary and not tainted with fraud, deceit, compulsion, et cetera.*  Defendant makes no claim that it had been obtained by actual coercion or fraud. She contends, however, that she should have had the benefit of counsel or friends at her side when she made and signed the statement.  Her claim *is insufficient to show either fraud or coercion.*  The statement was properly admitted, its value to be determined by the jury.  *People v. Barker* (1886), 60 Mich 277 (1 Am St Rep 501); *People v. Swetland* (1889), 77 Mich 53, 60; *People v. Biossat* (1919), 206 Mich 334; *People v. Johnson* (1921), 215 Mich 221; *People v. Treichel* (1925), 229 Mich 303; *People v. Greeson* (1925), 230 Mich 124."  (Emphasis supplied.)

Now it is true that the Supreme Court of the United States in certain recent decisions has restricted the admissibility of confessions, statements against interest, and admissions by defendants in criminal court cases.  Defendant cites *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977) and we add the case of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694). *Escobedo, supra,* and *Miranda, supra,* were discussed in the very recent case of *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882) with the effective dates of the rules set down in both cases being determined.  Mr. Chief Justice Warren writing for the court in *Johnson, supra,* on pp 733, 734 stated in part as follows:

"In the light of these additional considerations, we conclude that *Escobedo* and *Miranda* should apply only to cases commenced after those decisions were announced. We recognize that certain State courts have perceived the implications of *Escobedo* and have therefore anticipated our holding in *Miranda*. Of course, States are still entirely free to effectuate under their own law stricter standards than those we have laid down and to apply those standards in a broader range of cases than is required by this decision.

"Apart from its broad implications, the precise holding of *Escobedo* was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent.' 378 US at 490, 491, 12 L ed 2d at 986.

"Because *Escobedo* is to be applied prospectively, this holding is available only to persons whose trials began after June 22, 1964, the date on which *Escobedo* was decided.

"As for the standards laid down one week ago in *Miranda,* if we were persuaded that they had been fully anticipated by the holding in *Escobedo,* we would measure their prospectivity from the same date. Defendants still to be tried at that time would be entitled to strict observance of constitutional doctrines already clearly foreshadowed. The disagreements among other courts concerning the implications of *Escobedo,* however, have impelled us to lay down additional guidelines for situations not presented by that case. This we have done in *Miranda,* and these guidelines are therefore available only

to persons whose trials had not begun as of June 13, 1966. See *Tehan* v. *Shott,* 382 US 406, 409 (15 L ed 2d at 455), note 3, in relation to *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L ed 2d 653); and *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L ed 2d 106)." (Footnote omitted.)

We decline to apply *Miranda, supra,* requirements to cases commenced prior to June 13, 1966, and we hold that *Escobedo, supra,* be applied to only those cases falling into substantially comparable fact situations with that case, as stated in *Johnson, supra,* hereinabove quoted.

For the present, we choose to pass the second question of defendant and turn to the third question which raises the issue of whether or not the defendant's constitutional right to confrontation was violated when the court allowed the reading into the evidence of the testimony taken at the defendant's preliminary examination, of a witness unavailable at trial because of a serious terminal illness, whom defendant's counsel had cross-examined. Under Michigan Constitution 1963, art 1, § 20, the defendant in a criminal prosecution is entitled to be confronted with the witnesses against him. Use on the main trial, of the testimony from the preliminary examination of an unavailable witness is provided for by CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049) which is as follows:

"Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony, become insane or otherwise mentally incapacitated to testify."

That the witness, George Bigge, was unavailable, and for that matter, unable to testify on the trial is amply shown by the record relating to the time that the prosecutor offered the testimony of Mr. Bigge given on the preliminary examination which is as follows:

*"The Court:* Let the record show that he has been hospitalized for some time, since June, since prior to June.

*"Mr. Munro:* In February.

*"The Court:* Since February, with a heart condition. His age is?

*"Mr. Munro:* Eighty-two.

*"The Court:* Age 82. And the doctor would not permit him to come to court to testify and we had anticipated taking his testimony at the hospital and arrangements were made to take it at the hospital, but his condition has deteriorated to such condition it's not even possible to take it, he is not rational.

*"Mr. Wisti:* That is correct, we are willing to concede.

*"The Court:* You are willing to concede?

*"Mr. Wisti:* He is not in any physical or mental condition to testify in this proceeding at the present time."

We rule that the defendant's constitutional right of confrontation was not violated when the people used Mr. Bigge's preliminary examination testimony at the trial. The defendant's attorney had cross-examined the witness at the preliminary examination and it was conclusively shown that Mr. Bigge was unable to be present to testify and was suffering from a terminal illness that rendered him incompetent. *People* v. *Pickett* (1954), 339 Mich 294 (certiorari denied), 349 US 937 (99 L ed 1266, 75 S Ct 781); *People* v. *Moore* (1943), 306 Mich 29; *People* v. *Dusterwinkle* (1966), 3 Mich App 150.

The fourth question raised by defendant in effect alleged error in admitting the testimony of the people's medical witness, Dr. Strong, after a medical examination of defendant. Dr. Strong was not the defendant's own physician. No objection was made to the admission of this testimony in the trial court. In fact, the defendant admitted the doctor's qualifications and cross-examined him at some length. No objections pertaining to this issue now raised in this court for the first time were made in the trial court.

Objections not raised during the trial and passed upon in the trial court will not be heard in the Supreme Court, when raised for the first time on appeal. *People* v. *Hallman* (1941), 299 Mich 657; *People* v. *Counts* (1947), 318 Mich 45; *People* v. *Elliott* (1948), 322 Mich 313; *People* v. *Martin* (1965), 1 Mich App 265; *People* v. *Willis* (1965), 1 Mich App 428; and *Schmerber* v. *California* (1966), 384 US 757 (86 S Ct 1826, 16 L ed 2d 908).

Defendant's fifth assignment of error pertains to the assertion that the court interfered with counsel's right to present to the jury the state of mind of the defendant in his opening statement. Careful search of the record discloses the interruption to which defendant refers, as follows:

"*Mr. Wisti:* May it please the court, ladies and gentlemen of the jury: It is now my duty to make to you what is called an opening statement, to tell you about what we expect to prove in this case.

"Because much of the evidence has already been presented, much of what we intend to prove is already before you, I would like to tell you something briefly about the defendant, "Duffy" Doverspike. He lives here in Ontonagon. He was in the service, he spent 18 months overseas in an infantry outfit. He saw action for that period of time in Germany. After his discharge from the service—

"*The Court:* Mr. Wisti, can't you bring that out in testimony rather than make your argument now? Are you going to bring that out in testimony, too?

"*Mr. Wisti:* Oh, yes!

"*The Court:* What relation has that got to it?

"*Mr. Wisti:* This goes into his state of mind at the time this incident occurred.

"*Mr. Munro:* I hardly think his service record has anything to do with his state of mind 15 years later.

"*The Court:* You can bring that out in the testimony. You are going to prove that he was in the service and his service had an effect on his state of mind, if you are going to recite his war history and then go over it again—

"*Mr. Wisti:* I am all through saying what I was going to say about his service.

"*The Court:* Go ahead.

"*Mr. Wisti:* That after he was discharged, he developed an alcoholic problem, that he would drink for two or three weeks at a time."

We find no prejudicial error committed by the trial court in the foregoing which is the only interruption of defense counsel's opening statement.

Defendant claims that his attorney was unable to question him concerning his state of mind on direct examination. A search of the record discloses one instance wherein the defendant was precluded from presenting evidence that could in any manner be related to state of mind. The testimony appears in the record as follows:

"*Q.* Were you ever married?

"*A.* Yes, sir.

"*Q.* And you were divorced?

"*A.* Yes.

"*Q.* Do you have any children?

"*A.* One boy.

"*Q.* What's his name?

"*A.* Gale Doverspike,

"*Q.* And how old is that boy?

"*A.* 16.

"*Q.* You were married when?

"*Mr. Munro:* Your Honor, I don't see the relevancy of this.

"*The Court:* I don't see the relevancy, that has no bearing.

"*Mr. Munro:* The prosecution is interested in presenting all of the facts, but I don't understand why we have to go through all of this to present the facts in this case.

"*Mr. Wisti:* I think this all goes to the state of his mind, I think the jury should know about the drinking problem that this man has had for a period of years, and I think the jury—

"*The Court:* He stated he had a drinking problem, that he couldn't stop. There is no question but what he had the drinking problem, I think it's been admitted by both sides. I don't think it's material at all, it just consumes time. The objection is good, that's the ruling that I am making."

Defendant was precluded from answering the question "you were married when," but this took place after he had been questioned as being married and divorced, the number of his children, and the age of the one child. It is not explained how the date of defendant's marriage previous to the divorce would have any bearing upon his state of mind.

After a careful review of all the testimony, it is determined that defense counsel was allowed to question fully the state of mind of the defendant. No prejudicial error was committed as claimed by defendant in his fifth question posed on this appeal.

We now come to the defendant's second question, *i.e.,* can the same jury determine the validity of an alleged confession and the guilt of the accused? The answer to this question must be in the negative by reason of the decisions handed down in the cases of *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct

1774, 12 L ed 2d 908); *People* v. *Walker* (on rehearing, 1965), 374 Mich 331. In fairness to the trial judge, we must point out that neither of these cases was available at the time of the trial of this case.

The people maintain that the hearing on the motion for suppression of the alleged confession constituted the equivalent of a *Walker* hearing. We cannot agree. It merely permitted the admission of the evidence pertaining to the confession, but left the determination of voluntariness to the jury. This violated the rule laid down in *Walker, supra.*

We, therefore, as in *Walker, supra,* release our jurisdiction of the cause and direct the circuit court to assume jurisdiction to make a determination upon a separate record of the issue of voluntariness of the confession only. At this hearing, the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, defendant does not waive his right to decline to take the stand on trial in chief, if retrial is ordered. Neither does he waive any of the other rights stemming from his choice not to testify.

If the trial judge, on the basis of the separate hearing and record made, determines that the confession was involuntarily given defendant will thereupon be granted a new trial. If he determines the confession to have been voluntarily given and thus admissible in evidence, defendant will have had a trial affording him constitutional due process.

Accordingly, the case is remanded to the circuit court for the further proceedings herein directed.

FITZGERALD and J. H. GILLIS, JJ., concurred.