## PEOPLE v. KING.

1. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE.

Verdict of murder in the second degree *held*, supported by evidence presented in prosecution for homicide (CL 1948, §§ 750-.316, 750.317).

2. SAME—QUESTIONS BY TRIAL JUDGE.

The asking by the trial judge of questions which had the purpose of clarifying matters the prosecutor and defendant's counsel had brought out by their inquiries so that the jury might have as clear a picture as possible of what had occurred and the general situation involved in prosecution for homicide *held*, not to have made the judge assume the role of a prosecutor nor to have amounted to cross-examination (CL 1948, §§ 750.316, 750.317).

3. SAME—QUESTIONS BY TRIAL JUDGE—ADMISSIONS.

Inquiry by trial judge in prosecution for homicide as to whether certain statements and admissions by defendant had been voluntarily made to State police lieutenant *held*, not to have prejudiced defendant (CL 1948, §§ 750.316, 750.317).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur, Homicide § 455.
[2–4] 53 Am Jur, Trial § 75.
    58 Am Jur, Witnesses § 558.
    26 Am Jur, Homicide § 488.
    3 Am Jur, Appeal and Error § 1056.
    Propriety of conduct of trial judge in propounding questions to witnesses in criminal case.  84 ALR 1172.
[5] 26 Am Jur, Homicide § 314.
    Admissibility and propriety, in homicide prosecution, of evidence as to deceased's spouse and children.  67 ALR2d 731.
[6] 26 Am Jur, Homicide § 337.
[7] 26 Am Jur, Homicide § 488.
[8] 58 Am Jur, Witnesses §§ 657–661.
[9] 26 Am Jur, Homicide § 554.
[10] 26 Am Jur, Homicide § 580.

4. SAME—QUESTIONS BY TRIAL JUDGE—PREJUDICE.

> Questions put to witnesses by the trial judge which indicate the trial judge followed the testimony closely and exercised his prerogatives on the trial to insure a proper presentation of the case to the jury *held*, not to have prejudiced defendant in prosecution for homicide (CL 1948, §§ 750.316, 750.317).

5. SAME—SYMPATHY—PREJUDICE.

> Claim that defendant in prosecution for homicide was prejudiced by injection of an element of sympathy into case by inquiring of victim's widow with reference to the number of children in the family *held*, not tenable, since the inquiry was obviously directed to bringing out the situation existing at the home and who were present there when the victim was killed (CL 1948, §§ 750.316, 750.317).

6. SAME—SELF-DEFENSE.

> Reversible error was not committed by permitting inquiries of witnesses to show that defendant in prosecution for homicide and his hunting companions left the county where homicide occurred shortly after victim was killed and without notifying local authorities as to what had taken place, since facts of such nature had a bearing on the good faith of defendant in claiming self-defense (CL 1948, §§ 750.316, 750.317).

7. SAME—REMARKS OF TRIAL COURT.

> Remarks of trial court to defense counsel in prosecution for homicide that his objection to testimony of witness on ground it lacked responsiveness was open only to prosecutor who was then examining the witness *held*, not to have constituted disparaging treatment of such counsel prejudicial to defendant (CL 1948, §§ 750.316, 750.317).

8. CRIMINAL LAW—CHARACTER WITNESSES.

> Any character witness, in a prosecution for crime, regardless of his official position may be questioned for the purpose of showing any particular interest he may have in the one for whom he testifies and for the purpose of bringing out the basis for his expressed opinion without prejudicing the defendant.

9. HOMICIDE—REFERENCE TO FIRST-DEGREE MURDER.

> Reference to first-degree murder when defining second-degree murder and manslaughter after reminding jury that verdict of first-degree murder could not be brought in under the proofs *held*, not prejudicial to defendant who had interposed defense of self-defense and whose conviction of second-degree murder was sustained by the proofs (CL 1948, §§ 750.316, 750.317).

10. SAME—SECOND-DEGREE MURDER—SENTENCE.
    Sentence of 20 to 30 years for second-degree murder is per-
        mitted by statute, hence, claim that it was excessive is
        without merit (CL 1948, § 750.317).

Appeal from Newaygo; Pugsley (Earl C.), J.
Submitted June 9, 1960. (Docket No. 50, Calendar
No. 48,299.) Decided September 15, 1960.

James King was convicted of murder in the second
degree. Affirmed.

*Paul L. Adams*, Attorney General, *Samuel J.*
*Torina*, Solicitor General, *Russell L. Shepherd*,
Special Prosecuting Attorney, for the people.

*Moe F. Wolfgang (Meyer Weisenfeld*, of counsel),
for defendant.

CARR, J. Defendant was tried in the circuit court
of Newaygo county before a jury under an informa-
tion charging that on the 16th day of November,
1956, he "feloniously, wilfully and of his malice afore-
thought did kill and murder one George Lloyd
Krise." A verdict of guilty of murder in the second
degree was returned and accepted by the court. Mo-
tion for a new trial was made and denied. Defendant
was sentenced to imprisonment for a term of not less
than 20 nor more than 30 years.

The record in the case discloses that George Lloyd
Krise was the owner of 80 acres of land in said county
on which he resided with his family. Some annoy-
ances resulted to the occupants of the property be-
cause of trespasses thereon by hunters, and perhaps
others. On occasions it appears that Krise had or-
dered such parties to leave, and such direction was
followed. There is some testimony in the record indi-
cating that on the day when he was killed he had
insisted that several hunters, of whom defendant

was one, should leave the premises. It does not appear, however, that such prior incident, if it occurred, had any direct bearing on the subsequent occurrence here involved.

Late in the afternoon of the day in question, November 16, 1956, Krise left his home to go hunting. He was at the time armed with a 16-gauge single barrel shotgun. While so engaged, and at a distance of approximately 60 rods from his house, he encountered 3 automobiles occupied by hunters, of whom the defendant was one. Such encounter took place on a trail on the property of Krise, and he ordered the occupants of the cars to turn around and leave the premises. Thereupon defendant got out of the automobile in which he was riding and approached Krise, engaging in some conversation with him. There is testimony in the case that Krise renewed his orders and retreated somewhat as defendant came closer to him. Finally defendant reached a point where he could grasp the gun that Krise was carrying, and he did so with his left hand. He then drew a 38-caliber revolver which he was carrying on his person and shot Krise 5 times, each wound being serious. Defendant then entered his automobile, making some remark to his companions at the time to the effect that he would handle the matter. The cars were then driven along the trail to a county road, and immediately thereafter the occupants left the community for their respective homes. It is conceded that neither the defendant nor any of his companions reported the occurrence to local officers in the county, or to the State police.

Alarmed because her husband did not return within the time that she expected him to do so, Mrs. Krise, who had heard shots fired at some distance from the home, proceeded down the trail in the direction in which her husband had gone, in search of him. She discovered his body lying near the trail and appar-

ently concluded that he had been killed. She immediately sought help. The sheriff's office was notified, and the State police were called into the case. The officers made an investigation and discovered the wounds on the body of Krise, which was lying on the ground near the trail. Beneath the body, which was lying on its back, there was discovered a bullet buried a few inches in the sand which was directly beneath a wound in the back. Apparently such bullet had passed entirely through the body, and had been fired while Krise was lying prone on the ground. The shotgun was lying beside the body and was found to be loaded. It was the claim of the defendant on the trial that as he grasped the barrel of the gun in his encounter with Krise it was discharged. He asserted further that while the 2 men were engaged in their physical encounter Krise reloaded the gun. It was the theory of the prosecution on the trial that the shotgun had not been fired at all, and that it would have been impossible under the circumstances for it to have been reloaded as claimed by defendant.

The identity of defendant and of the others with him was discovered by the investigating officers largely, it is claimed, through a piece of mail addressed to defendant's wife which was found near the scene of the occurrence in question. Defendant at first denied any connection with the death of Krise but finally changed his story and gave his version of what occurred, claiming in substance, as he did on the trial, that he was acting in self-defense in shooting Krise with the revolver. The trial of the case took 7 days, the examination of some of the witnesses being prolonged, due in part, apparently, to a reluctance to testify, and to the giving of somewhat evasive answers. The transcript of the testimony indicates, however, that for a case of such nature and length it was conducted in a manner not subject to

material criticism. The rights of the defendant were carefully safeguarded by the trial court in the introduction of testimony and in other particulars as well.

' The case was submitted to the jury in a charge that set forth the theory and claims of the defense. The jury was advised in detail with reference to the rights of one who is assailed by another and has reason to fear that his life is in possible danger. The jury, however, rejected defendant's claim that he acted in self-defense and returned the verdict indicated. At the conclusion of the people's proofs the trial judge, on motion, ruled that defendant could not be convicted of first-degree murder and that the question was whether he was guilty of second-degree murder or manslaughter. Such ruling, in substance, was repeated in the charge. There is no basis in the record for a claim that the verdict as returned was not fully supported by evidence.

On behalf of appellant reversal of the conviction and a new trial are sought on several grounds. Among others, complaint is made of the attitude of the trial judge, and, in particular, of his examination of certain witnesses. Counsel have not discussed in their brief the particular instances which they generally assert to support their claim of prejudice but have merely directed our attention to certain pages of their appendix on which questions asked by the circuit judge appear. We have examined the pages of the appendix on which counsel rely and find no basis for the assertion that the judge assumed the role of a prosecutor or in fact that the questions that he asked amounted to cross-examination. In each instance the obvious purpose was to clarify matters which the prosecutor and counsel for the defendant had brought out by their inquiries, to the end that the jury might have as clear a picture as possible of what had occurred and the general situation involved.

Bearing in mind the length of the trial, and the fact that the transcript of the testimony exceeds 1,000 pages in length, we do not think it may be fairly said that questioning of witnesses by the judge was unduly extended, nor were such questions phrased in such manner as to suggest to the jury that the judge had formed any opinion as to the guilt of the defendant. As a matter of fact, in several instances the questions were obviously directed to insuring to defendant the protection of his rights. Of such character were the inquiries propounded to a witness for the prosecution, a lieutenant in the State police, designed to ascertain whether certain statements and admissions on the part of the defendant were voluntarily made. The purpose of the inquiry was obvious, and we fail to see how defendant could have been prejudiced thereby.

Apparently some of the references to the appendix setting forth questions asked by the judge have been included without particular consideration as to the subject matter. By way of illustration, attention has been called by counsel to 2 questions propounded to 1 of the witnesses for the people as to the driver with whom the witness rode from Detroit to Newaygo county and return. We think it unnecessary to discuss in detail the other references made. It is our conclusion that the defendant was not prejudiced by the fact that the trial judge followed the testimony closely and exercised his prerogatives on the trial to insure a proper presentation of the case to the jury.

Counsel for appellant further contend that the prosecutor erroneously injected an element of sympathy into the case by inquiring of Mrs. Krise with reference to the number of children in the family. The inquiry was obviously directed to bringing out the situation existing at the home and who were present thereat at the time of the occurrence in

which Krise was killed. Such questions were not open to objection on the theory that they were prejudicial to defendant. Likewise, we find no merit in the contention that there was reversible error in permitting inquiries of witnesses to show that defendant and his companions left Newaygo county shortly after the occurrence in which Krise was killed and without notifying local authorities as to what had taken place. Facts of such nature obviously had a bearing on the good faith of defendant in claiming that he acted in self-defense. It was not improper to show to the jury the conduct of the defendant and of his companions to which the inquiries were directed.

It is also argued that counsel for defendant and his witnesses were treated disparagingly by the court and by the prosecutor. Typical of incidents on which counsel rely in support of such claim was an occurrence during the examination of a witness for the people. The prosecutor asked a question which was answered by the witness, whereupon the following occurred:

"*Mr. Early* [defense counsel]: I will object to this other testimony as not responsive.

"*The Court:* You are not the one to make that objection?

"*Mr. Early:* Sir?

"*The Court:* You are not the one to make that objection.

"*Mr. Early:* I will make it, though.

"*Mr. Russell Shepherd* [prosecuting attorney]: I find his answer responsive.

"*The Court:* All right, if you have an objection on some other ground, you may make it.

"*Mr. Early:* I will object to it, then. It is not binding on this defendant in any way.

"*Mr. Shepherd:* Your Honor, it hasn't been answered in fine detail. I am trying to get the fine detail of obtaining the bullet from the ground.

"*Mr. Early:* In addition, I will object that it is immaterial and irrelevant.

"*The Court:* What is your objection to it?

"*Mr. Early:* What is my objection to it?

"*The Court:* Yes.

"*Mr. Early:* I am trying to keep the record as clear of clutter as possible.

"*The Court:* I hope you will bear that in mind.

"*Mr. Early:* Yes, sir.

"*The Court:* Objection is overruled. You may proceed. You made the objection that it was not responsive. That is an objection that is only available to the party who asked the question.

"*Mr. Early:* Thank you, sir.

"*The Court:* All right."

The colloquy between court and counsel speaks for itself. We do not think that it may fairly be said that the remarks of the court to counsel could have had any possible tendency to affect the jury to the prejudice of the defendant. Like comment may be made as to the questions asked of character witnesses for the defendant. Any such witness, regardless of his official position, may be questioned for the purpose of showing any particular interest that he may have in the one for whom he testifies and, likewise, for the purpose of bringing out the basis for his expressed opinion.

In charging the jury the trial judge made reference to the statutory provisions* relating to the crime of murder. As before mentioned, the judge also reminded the jury that he had previously informed them that a verdict of first-degree murder could not properly be returned under the proofs presented by the people. After reading the statutory provisions directly involved, he proceeded to define murder in the second degree and also manslaughter,

---

* CL 1948, §§ 750.316, 750.317 (Stat Ann 1954 Rev §§ 28.548, 28.549).

leaving it to the jury to say whether under the proofs the killing was one with malice or otherwise. As before noted, the charge also set forth in detail defendant's claim and the course that may be pursued by one who is assaulted by another and acts in the belief that his life is in danger from such other. Counsel for appellant insist that murder in the first degree should not have been mentioned. It is not conceivable, however, that the reference thereto in the charge, after defendant's motion to eliminate first-degree murder from the case had been granted, could have been prejudicial. The statute which the court read and which contained the definition of first-degree murder was of necessity the basis for the granting of such motion. It is obvious also that any reference to the statute in a case of this nature would involve differentiating between first- and second-degree murder, which is precisely what the court did. The argument advanced by counsel is answered by the holding of this Court in *People* v. *Palmer,* 105 Mich 568, where it was held that:

"In a prosecution for murder, the court, after defining the different degrees of murder, and also manslaughter, and after stating to the jury that, where a crime was divided into degrees, they might acquit of the principal charge and convict of the lesser offense, and that in such a case they should first consider the matter of the higher crime, and then go through the different degrees, withdrew from their consideration the subject of murder in the first degree, the respondent having been acquitted of that offense on a former trial. And it is held that the charge was not misleading and prejudicial in that the court first defined murder in the first degree, and instructed the jury that they should commence with the higher crime." (Syllabus 4.)

Under the proofs in the case the trial judge was correct in submitting to the jury the question of de-

fendant's guilt of murder in the second degree or of manslaughter. *People* v. *Droste,* 160 Mich 66; *People* v. *Collins,* 303 Mich 34. Such submission was coupled with instructions that he was entitled to be acquitted if he acted in self-defense. The evidence in the case supported the finding of the jury that the killing was not in self-defense and was committed with malice. The sentence imposed was authorized by statute and the claim that it was excessive is without merit. The record discloses that the case was fairly and carefully tried, that the rights of the defendant were fully protected, and that no reversible error prejudicial to defendant occurred during said trial.

The conviction and sentence are affirmed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.