PEOPLE v LYTAL

Docket No. 55281. Submitted July 13, 1982, at Lansing.—Decided
September 21, 1982. Leave to appeal applied for.

David W. Lytal was convicted of second-degree murder, Saginaw
Circuit Court, Eugene Snow Huff, J. Defendant appeals, alleg-
ing several errors. *Held:*

1. Evidence of the defendant's prior convictions was properly
admitted at trial. The trial court did not affirmatively misapply
the relevant criteria for admission of such evidence.

2. The trial court did not err in excusing a res gestae witness
and allowing his prior recorded testimony to be read at trial.
The witness was properly found to be unavailable because of
his physical inability to attend the trial. Furthermore, the
testimony of this witness was not so prejudicial as to constitute
manifest injustice, nor did defense counsel's failure to object to
certain of the testimony at the earlier hearing amount to a
denial of effective assistance of counsel.

3. The trial court did not err by mentioning first-degree
murder during its instructions to the jury. The jury instruction
was not objected to, and no manifest injustice is found. The

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 320, 321.
   30 Am Jur 2d, Evidence § 1175.
[2] 29 Am Jur 2d, Evidence § 320.
[3] 5 Am Jur 2d, Appeal and Error § 553.
[4] 29 Am Jur 2d, Evidence § 497 *et seq.*
[5] 21A Am Jur 2d, Criminal Law § 752.
   Modern status of rules and standards in state courts as to adequacy
   of defense counsel's representation of criminal client. 2 ALR4th
   27.
[6] 75 Am Jur 2d, Trial §§ 315, 317.
   Adequacy of defense counsel's representation of criminal client
   regarding argument. 6 ALR4th 16.
[7] 29 Am Jur 2d, Evidence § 249.
[8] 23 Am Jur 2d, Depositions and Discovery §§ 155 *et seq.,* 307 *et seq.*
[9] 29 Am Jur 2d, Evidence § 293.
   58 Am Jur 2d, Obstructing Justice §§ 8, 9, 25.
[10] 81 Am Jur 2d, Witnesses § 550.

prosecutor's rebuttal argument, which defendant alleges suggested a first-degree felony-murder theory to the jury, was responsive to matters raised by defense counsel in closing argument and any prejudice could have been eliminated by a curative instruction had one been requested.

4. Evidence concerning sexual relations between the defendant and the victim was properly admitted as part of the res gestae. The evidence was relevant to the events surrounding the homicide and was helpful to the jury in assessing the defendant's theory of accident.

5. Defendant objected to the admission of a letter which defendant wrote to a witness while they were both in jail, on the basis that the prosecutor violated a discovery order by not furnishing defense counsel a copy of the letter. However, the letter was not the type of matter which was included in the discovery order. The prosecutor had no duty to disclose the letter; therefore, the letter's admission was not erroneous on that basis.

6. The letter, while it was ambiguous, could be read as an attempt to influence the testimony of the witness and was therefore admissible to be considered by the jury as evidence of guilt.

7. Testimony of the witness that he had been threatened by others while in jail was admissible because there was a sufficient showing of a connection between the threats and the defendant.

Affirmed.

1. CRIMINAL LAW — PRIOR CONVICTIONS.

The decision to admit evidence of a defendant's prior convictions rests in the sound discretion of the trial court, which must recognize its discretion on the record.

2. CRIMINAL LAW — PRIOR CONVICTIONS.

The factors which a trial court must weigh in making a determination of whether to admit evidence of a defendant's prior convictions include: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a "bad man" or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the

accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?).

3. CRIMINAL LAW — APPEAL — FAILURE TO OBJECT.

Failure of a defendant to object to the prosecutor's failure to produce a witness forecloses the issue on appeal unless, absent review, manifest injustice will result.

4. EVIDENCE — HEARSAY — UNAVAILABLE WITNESS.

Hearsay testimony may be admitted where the declarant is unavailable as a witness and the testimony was given at another hearing of the same action and the opposing party had an opportunity and motive to develop the testimony by examination; unavailability includes a situation where the witness is unable to testify at trial because of a physical infirmity (MRE 804[a][4], 804[b]).

5. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — MISTAKE OF COUNSEL.

The standard of review for a serious mistake of defense counsel is whether, but for the mistake, the defendant would have had a reasonably likely chance of acquittal.

6. CRIMINAL LAW — ARGUMENT OF COUNSEL.

Argument of counsel which, if standing alone, may be improper may nonetheless be found not to result in error requiring reversal where it is responsive to matters raised by opposing counsel and where any unduly prejudicial effect could have been eliminated by a curative instruction had one been requested upon a timely objection.

7. EVIDENCE — RELEVANT EVIDENCE.

Relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence; relevant evidence should be admitted, but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice (MRE 401, 403).

8. CRIMINAL LAW — DISCOVERY — SCOPE OF DISCOVERY.

A prosecutor did not violate a discovery order by failing to provide a defendant with a copy of a letter written by the defendant to a witness where the letter did not clearly come within the scope of the defendant's motion for discovery.

9. CRIMINAL LAW — EVIDENCE — ATTEMPT TO INFLUENCE WITNESS.

Actions by a defendant such as flight to avoid arrest, the procuring of perjured testimony, and attempts to destroy evidence may be considered by the jury as evidence of guilt; thus, a letter written by a defendant which, although ambiguous, could be read as an attempt to influence the testimony of a witness was properly admitted into evidence.

10. WITNESSES — THREATS TO WITNESS — CRIMINAL LAW.

Testimony of a witness that he had been threatened by third persons while in jail with the defendant was properly allowed where the nature of the threats was sufficient to establish a connection between the threats and the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendant on appeal.

Before: ALLEN, P.J., and CYNAR and R. B. MARTIN,* JJ.

CYNAR, J. Defendant was orginally charged with open murder for the death of his girlfriend, Tori Lynn Scott. On July 18, 1978, defendant pled guilty to open murder. The trial court subsequently took testimony to determine the degree of murder. It found defendant guilty of second-degree murder and sentenced defendant to a life term with credit for 240 days. This Court vacated defendant's guilty plea. The Supreme Court denied the prosecutor's application for leave to appeal. *People v Lytal #1,* 409 Mich 884 (1980). Defendant was again charged with open murder. After a jury trial, defendant was found guilty of second-degree murder. MCL 750.317; MSA 28.549. Defendant was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sentenced to a life term with credit for 2 years and 273 days. Defendant appeals as of right.

## I

Defendant argues that the trial court abused its discretion by admitting evidence of defendant's prior felony convictions. MRE 609(a). The decision to admit evidence of prior convictions rests in the sound discretion of the trial court. *People v Jackson,* 391 Mich 323, 336; 217 NW2d 22 (1974). The trial court must recognize its discretion on the record, *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974), and should exercise its discretion with reference to three specific criteria, *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978).[1] Although it has been stated that the record should affirmatively reflect the trial court's awareness of the *Crawford* criteria, it has been held that this is unnecessary where there is no showing of an affirmative misapplication of the three criteria. See *People v Roberson,* 90 Mich App 196, 201-202; 282 NW2d 280 (1979), *lv den* 407 Mich 908 (1979), and *People v Wakeford,* 94 Mich App 249, 251; 288 NW2d 381 (1979).

---

[1] The *Crawford* Court set forth the following criteria:

"The factors which the judge must weigh in making his determination include: (1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a 'bad man' or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?)."

We do not find any indication that the trial court affirmatively misapplied the factors delineated in *Crawford.* The trial judge's comments indicate that he knew he had discretion to admit or exclude evidence of the prior convictions, although nowhere did he say the word "discretion". It is clear that he considered the nature of the offenses because he concluded that they involved dishonesty and noted the recency of the convictions. The second *Crawford* factor clearly favors admission because the crime charged, *i.e.,* murder, is not similar to the defendant's prior drug convictions. The third *Crawford* factor, however, favors exclusion because the defense was accident and defendant was the only eyewitness to the incident. We note, however, that there was no evidence that drugs played a part in Ms. Scott's death. Thus, the fact that the prior convictions were for drug offenses does not augment their prejudicial impact, contary to defense counsel's argument at the hearing on the motion *in limine.*

## II

Defendant contends that the trial court erred by excusing the production of a res gestae witness and allowing that witness's prior recorded testimony to be read to the jury.

During the testimony of Diane St. Dennis, an occupant of the same apartment building as that occupied by the defendant, a special record was made regarding the physical condition of her father, Wilbur St. Dennis. Ms. St. Dennis testified that her father had recently been released from the hospital and had a bad leg, which was so swollen that he could not walk on it. She testified that he could not come to the courthouse and that

he was under a doctor's care. The prosecutor later moved for the admission of Mr. St. Dennis's prior recorded testimony. Defense counsel objected on the ground that it was cumulative. Defense counsel renewed this objection before this testimony was read at trial. Defendant has not referred to, nor has this Court found, an objection to the failure to produce this witness. The failure to object will foreclose this issue on appeal unless, absent review, manifest injustice will result. See *People v Jeffrey Johnson,* 113 Mich App 650, 662; 318 NW2d 525 (1982).

We find no such manifest injustice here. Mr. St. Dennis was not a key witness. His testimony was similar to that of the other occupants of the apartment building. Indeed, while arguing that the prior recorded testimony of Mr. St. Dennis should be excluded, defense counsel argued that it was cumulative and repetitious. Further, we note MRE 804(b)(1) allows the admission of hearsay evidence where the declarant is unavailable as a witness and the testimony was given as a witness at another hearing of the same proceeding and the defendant had an opportunity and similar motive to develop the testimony by examination. "Unavailability" includes a situation where the witness is unable to testify at the hearing because of a then-existing physical infirmity. MRE 804(a)(4). See, also, *People v Murry,* 106 Mich App 257; 307 NW2d 464 (1981), and *People v Doverspike,* 5 Mich App 181; 146 NW2d 85 (1966).

We also reject defendant's argument that he was prejudiced by portions of Mr. St. Dennis's prior testimony which implied that the defendant was involved in criminal activity. Specifically, Mr. St. Dennis testified that he often overhead fights and

conversations in the defendant's apartment. One conversation involved a discussion about an apparent larceny. There was no objection to this testimony at the earlier hearing. At trial, defense counsel objected to all of the testimony on the ground that it was prejudicial, but there was no specific reference to the evidence of other criminal activity in the objection. On appeal, defendant argues that he was denied effective assistance of counsel by the failure to object to this testimony at the earlier hearing. The standard for review of a serious mistake of counsel was set out in *People v Garcia*, 398 Mich 250, 266; 247 NW2d 547 (1976). We cannot conclude that defendant would have had a reasonably likely chance of acquittal had the disputed evidence not been admitted. Defendant was impeached by evidence of his prior convictions. Many of the prosecution witnesses, friends of defendant, were impeached by evidence of their prior convictions. Evidence of other possible criminal activity did not prejudice defendant.

## III

On appeal, defendant argues that it was reversible error to mention first-degree murder during the jury instructions because the highest offense charged was second-degree murder. Defendant argues that the instructions encouraged a "compromise verdict", *i.e.,* encouraged the jury to convict defendant of the highest charge because they could not convict him of first-degree murder. It is important to note that there is no objection on record to this jury instruction. Reversal, therefore, is not required unless manifest injustice would result. We find no such manifest injustice. See *People v King*, 361 Mich 140; 104 NW2d 922 (1960), and

*People v Alexander,* 33 Mich App 704; 190 NW2d 319 (1971).

In *People v Palmer,* 105 Mich 568; 63 NW 656 (1895), the trial judge defined the different degrees of murder and also manslaughter. Later, the trial judge withdrew first-degree murder from the jury's deliberation because the defendant had been acquitted of that charge in a former trial. On appeal, the defendant argued that the charge was misleading and prejudicial because the judge first defined murder in the first degree and instructed the jury that they should commence with the higher crime. The Supreme Court rejected this argument: "A juror who could be thus misled or prejudiced would not possess intelligence sufficient to justify his sitting as a juror in any case." *Id.,* 573.

Defendant attempts to bolster his argument by suggesting that the instruction, when coupled with the evidence of sexual conduct and the prosecutor's rebuttal argument, improperly suggested a first-degree felony-murder (rape) theory to the jury. Scientific evidence presented at trial indicated that the victim had sexual intercourse within 8 to 12 hours before the autopsy. Defendant testified that he had sexual intercourse with Ms. Scott during a period when they were not fighting.

In closing argument, defense counsel mentioned several times that defendant and Ms. Scott had consensual intercourse during the several hours they were fighting. During rebuttal, the prosecutor suggested that sexual relations between defendant and Ms. Scott were certainly not voluntary. Defense counsel did not object to this argument. Appellate review is precluded unless the failure to review would cause a miscarriage of justice. *People*

*v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977); *People v Hogan,* 105 Mich App 473, 485-486; 307 NW2d 72 (1981). Argument which may be improper if standing alone may not constitute reversible error because of its responsive nature to matters raised by the defendant and where any unduly prejudicial effect could have been eliminated by a curative instruction if one had been requested upon a timely objection. *Duncan, supra,* 16-17. We believe the prosecutor's remarks were in response to the defense argument that the sexual intercourse was consensual, an argument possibly made to suggest that defendant did not want to kill his girlfriend. Even if the prosecutor's argument was improper, it could have been remedied by a curative instruction had one been requested.

## IV

We have not found a defense counsel objection to the testimony concerning evidence of possible sexual relations between defendant and the victim, and defendant has not referred to such an objection on appeal. Defense counsel did object to the admission of certain exhibits at the close of the prosecution's case. Specifically, defense counsel objected to all autopsy swabbings and said: "And I believe all sex and rape evidence should be kept out." Defense counsel argued that the rectal swabbings were used to suggest unusual sex acts and would prejudice defendant. Defense counsel's objection was overruled. Defense counsel also objected to the admission of glass found in the victim's vagina, and this objection was also overruled.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more or less probable than it would be without the evidence. MRE 401. In this case, the evidence was admitted as part of the res gestae of the crime.

" '*Res gestae* are the circumstances, facts and declarations which grow out of the main fact, *are contemporaneous with it,* and serve to illustrate its character.

" 'No inflexible rule has ever been and probably never can be adopted as to what is a part of the *res gestae.* It must be determined largely in each case by the peculiar facts and circumstances incident thereto; but it may be stated as a fixed rule that, included in the *res gestae* are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect.'" (Emphasis in *Castillo.*) *People v Castillo,* 82 Mich App 476, 479-480; 266 NW2d 460 (1978), quoting *People v Kayne,* 268 Mich 186, 191-192; 255 NW 758 (1934).

We conclude that the evidence of sexual relations was part of the res gestae. It sheds light on what transpired between defendant and the victim on the night of the homicide. This evidence would be helpful to the jury in assessing the defense of accident. In *People v Stewart,* 107 Mich App 458; 309 NW2d 564 (1981), an appeal from a second-degree murder conviction, this Court found no error in the admission of that defendant's semen-stained undershorts because the sexual aspect of the crime was part of its res gestae.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Defendant argues that the evidence suggested unusual sex acts and was unduly prejudicial. If any prejudice was created by this evidence, it arose at the time of the testimony relevant to the evidence of sexual relations. There was no objection to this testimony.

The admission of the exhibits did not further prejudice the defendant because they were cumulative to the unobjected-to testimony. The admission of this evidence does not require reversal.

V

During the testimony of Theodore Vlassis, a friend of defendant, a letter allegedly written by defendant and sent to Vlassis a few days before trial while they were both in jail was admitted into evidence.[2] Before the admission of this letter, defense counsel argued out of the presence of the jury that the prosecutor violated the discovery order by not giving defense counsel a copy of the letter and that the letter was irrelevant. The trial court permitted Vlassis to read the letter at trial. Vlassis testified that four days before receiving the letter a pack of cigarettes was passed to him in jail.

We reject defendant's argument that the prosecutor violated the discovery order. In relevant part defendant's motion for discovery sought: "A copy of any and all exculpatory and/or inculpatory written or recorded or taped statements and summaries of any oral statements made by the defen-

---

[2] The letter read:

"P.S. I won't have any candy until tomorrow. Ted, I'm about different as you, as you'll find out. Hey, Bro, if you need any smokes, candy, just ask.

"I'm not mad at you. I have never been mad at you. You are the one that is mad at me. We were good friends at once, Ted. Hey, it's in the past. Can't you let things lay?

"Hey, Bro, you don't have anything to worry about, I won't do anything to you. All I would like is for you and me to be friends again.

"You know my word is my bond. What I say, I do. I'm going back to Court and I don't care what you tell them, because it won't hurt me anyways. Later.

"P.S. Write back and let me know."

dant to a Prosecuting Attorney, his assistants or
any law enforcement officer."

Under a literal reading of the discovery petition,
there was no duty to disclose statements made by
defendant to persons other than the prosecuting
attorney, his assistants, or a law enforcement
officer. In *People v Browning (On Rehearing)*, 108
Mich App 281; 310 NW2d 365 (1981), the trial
court granted the defense discovery motion re-
questing discovery of "'all written statements
made by or taken from witnesses or other persons
having knowledge of the matters alleged in the
information.'" *Id.*, 305. On appeal, defendant ar-
gued that the prosecutor violated the discovery
order by failing to turn over a taped interview
with a key prosecution witness (Champion). This
Court found no error, accepting the prosecution's
argument that defense counsel never requested
oral or video recordings of any witness.

"We do not want to encourage the police and prose-
cutors to look for loopholes in discovery orders. But by
the same token, it does not ask too much to require
defense counsel to state with some clarity just what is
being sought. Defense counsel was in the driver's seat
here—the trial court granted his motion *in toto*. Under
these facts, where the defendant, in effect, wrote the
discovery order, the prosecutor was not required to
furnish the Champion tape to defense counsel." *Id.*, 307.

The nature of defendant's letter to Vlassis is
much different than the type of statements re-
quested. There are no questions of right to counsel
or voluntariness of the statement. There was no
error in admitting the letter over the objection
that the prosecutor failed to comply with the
discovery order.

Defense counsel also objected that the letter was

irrelevant and prejudicial. Actions by a defendant such as flight to avoid arrest, procuring perjured testimony and attempts to destroy evidence may be considered by the jury as evidence of· guilt. *People v Casper,* 25 Mich App 1, 7; 180 NW2d 906 (1970). The rationale for this rule was set out in *People v Hooper,* 50 Mich App 186, 199; 212 NW2d 786 (1973), *lv den* 391 Mich 808 (1974):

"The grounds on which this evidence is admissible has been commonly termed as being 'consciousness of a weak case'. In 2 Wigmore, Evidence (3d ed), § 278, p 120, the rule is stated as follows:

" 'It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's *falsehood* or *other fraud* in the preparation and presentation of his cause,· his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.'

"Michigan has long followed this rule and held that evidence that a defendant has attempted to suppress testimony or induce perjury is admissible." (Emphasis in original.)

In *Hooper,* there was no error in permitting testimony that that defendant asked the complaining witness to drop the charges. See, also, *People v Mock,* 108 Mich App 384, 389; 310 NW2d 390 (1981).

*People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974), presents a factual situation similar to this case. During trial, a letter sent by the defendant therein to another prison inmate proposing shady trial assistance and reciprocation was intercepted by the prosecution and offered into evidence. On

appeal, that defendant questioned its relevance and contended its potential prejudicial effect outweighed its probative value. There was no error in the admission of this evidence. This Court found that the letter and its contents were material to the defendant's credibility. *Id.,* 52. See, also, *People v Ranes,* 58 Mich App 268; 227 NW2d 312 (1975), and *People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975).

We conclude that there was no error in admitting the letter written by the defendant to Vlassis because it could be read as an attempt to influence his testimony. Defense counsel argued that the letter was ambiguous. We agree that it is not obvious that the letter was meant to threaten Vlassis. Nevertheless, this was a matter for the jury to decide by applying their common sense and experience.

Defendant also claims error in the admission of Vlassis's testimony on redirect examination that he was threatened in jail by other people. Vlassis testified that he was approached by a few people who threatened him and told him that Dave, the defendant, wanted to see him. On Appeal, defendant argues that this redirect testimony was beyond the scope of cross-examination; however, no objection on this basis was made at trial. There is also a question of the relevancy of this testimony. In *People v Long,* 144 Mich 585; 108 NW 91 (1906), the prosecutor asked a witness: "Since this case has been commenced, has any person come to you for the purpose of trying to get you to stop the case by the offer of a reward to you?" *Id.,* 585. The witness answered affirmatively. The Supreme Court found error, holding that the prosecution should not have made this proof unless able to offer some testimony tending to show that the

defendant procured the offer to be made or that it was made with his approval or acquiescence. *Id.,* 585-586. In this case, however, Vlassis testified that the people who approached him told him that Dave, the defendant, wanted to see him. This was sufficient to establish the connection between defendant and the threats.

Affirmed.