**Walter L. MARTIN, Petitioner,**

v.

**John JABE, Respondent.**

**Civ. A. No. 89–CV–70609–DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 31, 1989.

Ted C. Farmer, Detroit, Mich., for petitioner.

John D. O'Hair, Timothy A. Baughman, Jeffrey Caminsky, Wayne County Prosecutor's Office, Detroit, Mich., for respondent.

## MEMORANDUM OPINION

DUGGAN, District Judge.[*]

On February 23, 1989, the Petitioner, Walter L. Martin, filed a Petition for Writ

---

* Acting in the absence of Julian Abele Cook, Jr., Chief Judge.

of Habeas Corpus, in which he complained of having suffered violations of his Constitutional rights during the course of a criminal trial in the Recorder's Court of Detroit, Michigan in October 1979, all of which resulted in his wrongful imprisonment.[1] For the reasons that have been set forth below, Martin's application for relief must be denied.

## I

Martin was arrested and charged with having participated with Clarissa Marsh and Benjamin Williams [2] in a series of serious criminal offenses, which resulted in the deaths of Koran Knighton and Ollie Scott.

On July 12, 1985, Martin was convicted of two counts of first degree murder, in violation of M.C.L. § 750.316, M.S.A. § 28.548; one count of an assault with intent to murder, in violation of M.C.L. § 750.83, M.S.A. § 28.278; and one count of felony firearm, in violation of M.C.L. § 750.227b, M.S.A. § 28.424(2). Seven days later, Martin was sentenced to serve mandatory life imprisonment terms for the murder and assault convictions, and a two year period of incarceration for the felony firearm offense.

On July 21, 1988, the Michigan Court of Appeals affirmed his conviction.[3] On February 1, 1989, Martin's application for leave to appeal was denied by the Michigan Supreme Court.[4]

## II

As his first claim, Martin asserts that the "trial court reversably erred in admitting incriminating hearsay statements of non-testifying co-Defendant, Clarissa Marsh, thereby violating [his Sixth Amendment] right of confrontation." [5] He specifically complains that the prosecution produced a witness, Sergeant James Harris of the Detroit Police Department, who reported his conversation with Marsh subsequent to the incident in question. Harris testified that Marsh, though admitting her presence at the time of the homicides, denied any personal involvement in the tragedy and, significantly, identified Martin as the culpable individual. According to Martin, this testimony was, in effect, the statements of Marsh without the ability to cross-examine and test her credibility. Moreover, he argues that "[t]his testimony was not harmless beyond a reasonable doubt," [6] inasmuch as (1) the credibility of her statements were "enhanced before the jury by the prosecutor's opening statement that she would testify against [him]," [7], and (2) "[t]he only other evidence connecting [him] with the scene was ... the suggestive identification" [8] of him by the sole survivor of the incident, Cynthia Green.

■ This Court finds Martin's contention to be without merit. Initially, it should be noted that he, through his counsel, failed to voice an objection to the prosecutor' statements which are now under scrutiny. While under ordinary circumstances, this failing would represent a waiver of a habeas issue, Martin, in acknowledging that no timely objection was made, submits that "this [procedural defect] does not preclude review of an alleged violation of constitutional rights." [9] He is correct. While this Court does not conclude that a constitutional tort has been committed, there is facially a claim of a fundamental wrong. Therefore, the failure to lodge an objection in a timely fashion will not necessarily represent a bar to a further examination of the issue at this time.

1. Defendant, John Jabe, is the Warden of the State Prison for Southern Michigan in Jackson.

2. Marsh and Williams were tried separately and prior to Martin.

3. *See* Docket No. 88465.

4. *See* Docket No. 83925.

5. Martin's Brief at 13.

6. *Id.* at 14.

7. *Id.*

8. *Id.*

9. *Id.* at 13.

With regard to Martin's substantive claim, this Court does not find Harris' testimony, as it relates to Marsh's statements, to have been constitutionally prohibited. Her description of Martin (i.e., his "exact height" and name) does not fall within the *Bruton* [10] prohibitions. The balance of Martin's challenges (e.g., Marsh put him "in a bad light before the jury" [11] when she supplied Harris with a list of his aliases) must fail because (1) they are without substantive merit, and (2) he failed to protect his appellate rights of review by registering a timely objection, thereby waiving a right of review in a habeas proceeding in the absence of a demonstration of good cause or prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Issac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). No such prejudice or good cause have been shown. Hence, his argument must fail.

### III

Next, Martin asserts that "the trial court's reading Clarissa Marsh's name as a witness and in the prosecutor's references to her in his opening statement." [12] He charges the state with "prosecution misconduct," [13] and specifically points to a visit to the prison by the prosecutor and Harris to talk with Marsh. As a result, Martin claims:

> They did this knowing she was represented by counsel and without counsel's permission. (Citations omitted). March [sic] even asserted her right to counsel at the interview but the prosecutor continued it. Clearly, the prosecutor sought to circumvent Marsh's counsel's involvement, knowing he would counsel her to assert her privilege. Given the trial court's awareness of the posture of Marsh's case (convicted and on appeal) the Court should have known to hold an evidentiary hearing on whether Marsh would testify before even greeting the prospective jurors. (Citation omitted).

The prosecutor obviously did not ask for one because he knew Marsh's counsel would be present and because he knew that the Court would insure Marsh's awareness of her Fifth Amendment Rights. Instead, the prosecutor quickly proceeded into trial, hoping that he could reap the benefits of his bad faith contact with Marsh before appropriate reason intervened. The reading of Marsh's name as a witness, the prosecutor's opening statement announcing Marsh's testimony, and Marsh's hearsay testimony combined to create inherently prejudicial error. [14]

In response, the Defendant says that Martin did not object or seek a mistrial on the basis of this allegedly improper evidence. Moreover, the record indicates that Marsh, in testimony outside the presence of the jury, acknowledged that she had expressed a willingness to testify as a witness for the state until the morning of the trial while enroute to the courthouse.

Defendant correctly notes that Martin did not express any objection to the contested statements by the prosecutor. Martin's failure to call this "error" to the attention of the trial judge at the time of the alleged procedural offense must be construed as a waiver of his right to complain at this time. He has advanced no just cause for this omission. *Wainwright, supra; Engle, supra.*

Moreover, this Court perceives no evidence of unwarranted prejudice to Martin. The prosecutor had a justifiable basis and belief that (1) Marsh would appear as a witness for the prosecution, and (2), the claim of privilege would be rejected by the court because her trial had already taken place. The prosecutor's opening statement merely expressed the hope that the jury would hear Marsh's testimony.

Therefore, Martin's argument on this issue must be denied.

---

**10.** *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**11.** Martin's brief at 13.

**12.** *Id.* at 14.

**13.** *Id.*

**14.** *Id.* at 15–16.

## IV

As his third point, Martin alleges that the search by Detroit police officers of the apartment, in which he and Marsh resided, constituted an illegal search, in violation of his Sixth Amendment rights. He submits that the police were without any authority to enter the Mark Twain Street apartment in the absence of an authorized search warrant. Martin claims that the introduction of a photograph of him, Marsh and another individual, contributed to his conviction, in that "[t]he police no doubt showed it ... to [Green, the survivor and official complainant] and its showing as an individual picture of [him] contributed to an irreparable misidentification." [15]

■ In response, the Defendant contends that, despite Martin's current protestations, he did not seek the suppression of the document (or documents) on the grounds which have been advanced in the instant Petition. Moreover, and significantly, the Defendant writes:

> [Martin's] claim that an alleged constitutional violation should excuse his failure to object is without merit, in that it is the threat—rather than the application—of exclusion that gives the exclusionary rule whatever validity it may have. Accordingly, it does not apply beyond this prosecution's case in chief, upon proper objection. *United States v. Havens*, 446 U.S. 620 [100 S.Ct. 1912, 64 L.Ed.2d 559] ... (1980), and is not available on collateral review of a conviction. *Stone v. Powell*, 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976).[16]

Defendant's position is correct. Martin's third claim is no longer appropriate on habeas review, *Stone, supra; Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), and, thus, must be rejected.

## V

■ In support of his fourth claim, Martin asserts that the trial court abused its discretion by improperly limiting his *pro se* cross examination of Detroit police officer, Robert Everett. He submits that the judge, after excusing the jury, admonished him for submitting "confusing, speculative" questions, and gave him a period of two minutes in which to complete his cross examination. Martin asserts that "[g]iven the seriousness and complexity of the facts of the case, and given that [he] had taken over his own representation to overcome perceived mistakes or inadequacies of his counsel, the [trial court judge] should have continued to give [him] leeway." [17]

Defendant takes issue with Martin, stating that Everett had testified that he, as one of the first officers to arrive at the scene of the homicide, saw bloodstains on the stairwells and found the victims in the basement. It is argued by the Defendant that the admonition was issued by the trial court when Martin's *pro se* cross examination began "to drift aimlessly from unrecalled irrelevancy to irrelevancy...." [18]

In Michigan, the trial judges are given the authority to place a limitation upon cross examinations in order to promote an effective administration of justice.[19] Although a trial judge must be prudent not to trammel upon an individual's right to test the accuracy of a witness' testimony through the process of cross examination, the reviewing court must be equally careful to avoid an unwarranted interference into the management of a trial in the absence of an abuse of discretion. There was no abuse of discretion here. Therefore, Martin's claim on this issue must be rejected.

## VI

In support of his belief that he had been subjected to a Constitutional tort, Martin charges the prosecutor with having made

---

**15.** *Id.* at 17.

**16.** Defendant's brief at 12.

**17.** Martin's brief at 18.

**18.** Defendant's brief at 13.

**19.** *See* M.R.E. 611; *also see People v. Lewis*, 25 Mich.App. 132, 181 N.W.2d 79 (1970).

improper remarks about an alibi witness during the closing argument. Specifically, he asserts that the prosecutor wrongly insinuated that Gloria Parsons did not need the crutch or leg cast on which she "hobbled" into court.[20] It is his belief that the prosecutor based his closing argument "on facts not in evidence, that is, ... Parsons' leg injury."[21]

■ Once again, this Court must note that under the *Wainwright*[22] test, a failure to lodge an objection to the introduction of otherwise inadmissible evidence constitutes a waiver of a subsequent claim of review in the absence of a demonstrable commission of a constitutional tort. Martin's failure to properly notify the trial court must be considered as a waiver to register a complaint on this issue in a federal habeas setting.

Even if *Wainwright* was not applicable on this point, this Court would reach the same conclusion—that Martin's claim is without merit—because the prosecutor's argument represented an attack on the credibility of an opposition witness. This approach—in the absence of unwarranted prejudice—is an appropriate area for com-

ment. Hence, Martin's argument is without factual or legal support.

## VII

As an additional basis for habeas review, Martin alleges that the trial court "permitted manifest injustice in allowing the prosecution to elicit from Harris that he had put Green into protective custody because she had received threatening telephone calls."[23]

In his brief, the Defendant once again refers to the record and notes that Martin neglected to express an objection to the introduction of evidence which he now contends was improperly presented to the jury.

Michigan authorizes the introduction of threats against a person if a proper foundation can be established by the prosecution.[24] Although Martin decries the presentation of this evidence to the jury, the waiver doctrine, which was discussed and established under *Wainwright* and *Engle,* *supra,* is applicable here. His failure to voice an objection to the absence of a proper foundation must preclude him from raising the issue before this Court.[25]

---

20. In his closing argument, the prosecutor said to the jury:

I'd like to talk about the defense that Mr. Martin put on. He brought in a Gloria Parsons yesterday, the mother of two of his children, who came in hobbling on a crutch with a cast. I didn't know if that was real, I don't know if that was a plea for sympathy, but she comes in and says that back when this happened she remembered that day so well seven years ago, it was a great day. She had her two babies by Mr. Martin and he was making his monthly visit to check on them and he brought his mother and he brought his sister, who by the way just happened to have passed away in 1982, and that they all had dinner and Mr. Martin left, clearly after the shooting takes place.

I asked Miss Parsons why didn't she go to the police right away. I mean if you knew that Mr. Martin wasn't in on it why didn't you go to the police? No real good explanation. I want you to think about this notion, ladies and gentlemen: Do you think it's possible in the United States of America for a woman to walk in this courtroom that is the mother of two children of a man who is charged with two counts of first degree murder, one count of assault with intent to commit murder, and a count of felony firearm, do you think she

can come in this courtroom and look us all in the eye and swear to tell us the truth and not quite tell us the truth, perhaps trying to protect the man that is the father of the children. That's what you have to think about. Did Miss Parsons come in here and testify because she had feelings for Mr. Martin. I'm suggesting to you that's why she did it.

Trial Tr. of July 11, 1985 at 44–45.

21. *Id.*

22. 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

23. Martin's brief at 20.

24. *People v. Lytal,* 119 Mich.App. 562, 577, 326 N.W.2d 559 (1982).

25. In its July 21, 1988 unpublished per curiam decision, the Michigan Court of Appeals, in dicta, opined:

[W]e believe that defense counsel may have failed to object to Harris' comments to avoid the admission of damaging foundation evidence that defendant was seen on the complainant's hospital floor shortly before the threatening phone calls were received.

Accordingly, Martin's claim must be rejected.

## VIII

Next Martin complains that the trial court permitted an "error of constitutional dimensions" when his family was characterized by Harris during his appearance before the jury as being uncooperative. He contends that this testimony "was an improper comment on [his] pre-arrest silence, infringing on [his] Federal constitutional right to remain silent and shifting the burden of proof to [his] family to exonerate him ..." [26]

Defendant asserts that Martin has failed to preserve this issue for a habeas review, in that he did not register a timely objection to this allegedly improper admission of evidence.

■ Martin's position is without merit. He argues from a mistaken legal premise. Pre-arrest silence is not afforded conclusive protection.[27] In addition, he has not cited any case law—and this Court has found no legal authority—which would suggest that his right to remain silent extends to third persons.

## IX

Martin maintains that his conviction was based on his attorney's ineffective assistance during the trial. He specifically charges, *inter alia*, that his counsel failed to (1) express his opposition to the admission of Marsh's alleged hearsay statements, (2) move for a mistrial, (3) object to certain representations by the prosecutor during his closing arguments, (4) voice an objection to evidence of threats to Green, (5) oppose the offer of evidence regarding his family's lack of cooperation with the police officers during their investigation of the homicides, and (6) effectively cross examine Taylor.

Defendant has expressed his opposition to Martin's ineffective assistance argument by noting, as he has frequently done in the past, that no objection was made to the trial court on this issue. Moreover, he concludes that a review of the record clearly reflects that Martin's counsel did everything that he could have done to protect the interests of his client.

Our Constitution does not place a standard of perfection upon a defense counsel. So too, a reviewing court is not given the advantage of evaluating the effectiveness of counsel from a hindsight perspective. Instead, a claim—such as the one before this Court—must be assessed by determining whether the conduct of the defense counsel impeded the accused from obtaining a fair trial. *Engle, supra.*

■ Martin has aptly cited a passage from an often quoted 1984 Supreme Court case [28] which addressed the issue that he has now presented to this Court:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified facts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing norms is to make the adversarial testing process work in the particular case.

An examination of the record by this Court in its entirety, including an assessment of the evidence against Martin, does not share his view with regard to his attorney's effectiveness during the course of the trial. In recognizing that each counsel may have a different trial strategy with regard to a client's defense against a criminal charge, there is an insufficient amount of evidence before this Court with which to conclude that Martin was not provided with

---

**26.** Martin's brief at 21.

**27.** *See Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

**28.** *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

legal advice and services which satisfy the minimum standards of the Constitution.[29]

This Court has already commented upon the lack of merit of the claims which form the underpinning of his ineffective assistance claim. Hence, no further amplification is necessary. Therefore, Martin's contention with regard to the quality of his attorney's services must be rejected. There is nothing on the record which would support Martin's claim that he did not receive a fair trial.

## X

■ Martin also advances the argument that his right to a speedy trial was denied, citing the "prosecution's failure to timely extradite him or to otherwise secure his return to Michigan."[30] In essence, he submits that although he had been arrested in Canada and all of the requisite procedural steps for extradition had been undertaken and completed by the Canadian authorities, the State of Michigan and, in particular, the prosecutor in this case, did not exercise due diligence in seeking his return to the United States for trial or assume those necessary legal obligations which would protect his rights under the United States Constitution.

This contention must be denied. The record indicates that the prosecutor made an effort to consummate the extradition proceedings in 1981, but was advised by Canadian authorities that Martin would not be surrendered to the United States until the completion of his prison sentence in that country.

Thus, this Court concludes that, contrary to Martin's protestations, the prosecutor's efforts to extradite Martin to the United States were reasonable under the circumstances which found him detained by Canadian authorities for an extended period of time.

## XI

Martin's final claim is that the trial court erroneously denied his motion to dismiss the complaint and arrest warrant which "were issued solely on the information and belief of a police officer without further inquiry on the record."[31] In his argument, he cites Michigan law which requires an examining magistrate "to make further inquiry in order to satisfy himself that the probable cause required to support the warrant exists."[32]

This argument—a contention that his arrest constituted a violation of his Fourth Amendment right against unreasonable search and seizure—is without legal sufficiency, in that it is a claim which was foreclosed by the Supreme Court in 1974.[33]

## XII

For the reasons which have been stated, Martin's Petition for Writ of Habeas Corpus must be denied. An appropriate judgment may enter.

IT IS SO ORDERED.

---

**29.** In its decision of July 21, 1988, the Michigan Court of Appeals wrote:

> [T]he trial court specifically asked defendant if he was satisfied with the representation of Mr. Daniel, defendant's sixth appointed attorney, and defendant stated that he was. The trial court commented several times during the trial that defense counsel was to be commended for extremely professional representation. The record also makes it apparent that defendant insisted on strategies different from those recommended by counsel. Record at 5.

**30.** Martin's brief at 31.

**31.** Martin's brief at 35.

**32.** *Id.*

**33.** *Stone, supra.*